**In re READING HOTEL CORPORATION.**

No. 18156.

District Court, E. D. Pennsylvania.

June 2, 1936.

Robert T. McCracken and Mercer B. Tate, Jr., both of Philadelphia, Pa., and Paul D. Edelman, of Reading, Pa., for first mortgage bondholders' committee.

Edgar S. Richardson, John A. Moss, and John B. Stevens, all of Reading, Pa., for debtor.

T. I. Snyder, of Reading Pa., for second mortgage bondholders' committee.

Joseph R. Dickinson, of Reading, Pa., for first mortgage bondholders.

Harry Felix, of Philadelphia, Pa., for stockholders.

Franklin E. Kantner and George Eves, both of Reading, Pa., for Estate of William A. Sharp.

KIRKPATRICK, District Judge.

Reading Hotel Corporation, which owns and operates a large, modern hotel in the city of Reading, filed its petition for reorganization under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207), on September 6, 1934. The real estate was subject to two mortgages—first and second—securing bond issues of $900,000 and $800,000, respectively. Interest was in default, and taxes were due and unpaid. Foreclosure proceedings upon both mortgages had been begun in the state court. This court took jurisdiction and placed the debtor in possession with authority to continue operation.

On April 9, 1935, the corporation was adjudged insolvent ([D.C.] 10 F.Supp. 470) after reference to a special master who found that the value of land and buildings was $1,300,000 and that the value of the furniture and equipment (which was not subject to the mortgage liens, but which, presumably, would be reached by any deficiency judgment upon the second mortgage) was $100,000.

A plan of reorganization, proposed by first mortgage bondholders, assented to by the requisite number of creditors of each class and recommended by the special master, is now before the court for confirmation.

In a general way, the plan provides for the transfer of all the property of the corporation to the first and second mortgage bondholders; the transfer being accomplished by ordering the stockholders to surrender their stock to the corpora-

tion for cancellation and issuing new stock upon a share per bond basis to both classes of bondholders. The liens of the two mortgages are not divested nor disturbed nor is there any reduction in the principal of the debts which they secure. The maturities are, however, .postponed, and the right to foreclose for default in interest payment is (in effect) suspended for a period of three years. As between the first and second mortgage bondholders, certain adjustments are provided for, which in general involve a limited participation by the second, after the expiration of three years, in earnings applicable to interest, at the possible expense of the first, and in minority representation in a voting trust which is set up to provide for the future control of the company.

■ The plan will be confirmed, but I think it only fair to the objectors to say that I have not reached the conclusion to do so without doubt, which was resolved only after an examination of the whole question involved, which has perhaps unduly prolonged these proceedings. The difficulty arose from the fact that the plan gives the entire property of the debtor to the mortgage bondholders, who acquire it by virtue of an adjudication of insolvency and a finding that its value is less than the mortgage liens, instead of by a decree of foreclosure and public sale at which all persons, including the corporation and its stockholders, would have an opportunity to bid. So viewed, the plan is a substitute for foreclosure, and the result is that the rights of the mortgagees are extended beyond the letter of the mortgagor's undertaking.

There is much to be said for the argument that the bankruptcy laws have never attempted to enlarge any substantive right of the mortgagee any more than they have attempted to modify his rights in the interest of either the debtor or other creditors. See Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 583, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106. But I have come to the conclusion that whatever modification of the mortgage contract may be involved in confirming a plan of this kind in the case of an insolvent corporation is a matter of form rather than substance. Collective action by the bondholders almost invariably results in their acquisition of the property—certainly in cases where the liens are far in excess of its value, as they are in this case. If the corporation or the stockholders are in a position to buy in their own property at a judicial sale, they would be in a position to pay the bondholders in full, now, and avoid the necessity of further proceedings.

In applying a statute whose objectives are intensely practical, the court, while not losing sight of the substantial equities of the parties where they exist, should not be governed by purely legalistic considerations. This was the view taken by the Circuit Court of Appeals for the Second Circuit in Re Central Funding Corporation, 75 F.(2d) 256, 259, where the precise question now before this court was passed upon. In a very thorough opinion which covers every essential point involved here, Judge Hand said: " ' "Reorganization" * * * means, usually, that the equity of the stockholders, if any ever existed in actual value, has vanished; that the property virtually belongs in equity to the bondholders; and that, if the bondholders will combine for the mutual protection of their equal interest, they will have a practical monopoly of the bidding.' A 'reorganization' does not necessarily presuppose the survival of the rights of stockholders or even of junior creditors, when they have become worthless, but may be a readjustment of the rights of lienors under a new corporate structure."

It has been, of course, perfectly clear at all times that this court could not have compelled acceptance by the bondholders of any new plan or amendment of the present plan which would give the stockholders rights in the reorganized property. If new capital had been required, it would have been proper to have recognized them as against outsiders in providing for the terms upon which it was to be subscribed. But this corporation has no need of new money. It has cash on hand of over $100,000 resulting from operation during the pendency of these proceedings, and there are practically no claims of general creditors.

The only choice before the court was between confirming the plan on the one hand, and permitting the bondholders to proceed with the foreclosure on the other. This latter course could have been carried out either by dismissing the pro-

ceedings or by ordering liquidation. It may be pointed out that this proceeding under section 77B was not instituted by the creditors of this corporation, but the petition was filed by the corporation itself while foreclosure proceedings were pending in the court of common pleas of Berks county. The bondholders could have refused to consent to any plan filed and thus effected a much earlier dismissal of the proceedings.

There is pending a petition presented by the debtor alleging that the Reconstruction Finance Corporation is willing to make a commitment to loan the sum of $620,000 upon the security of the debtors' property upon certain conditions, among which is the giving of a first mortgage upon the property to secure the loan. Mr. Mayer proposes a plan of reorganization in which the first mortgage bondholders would receive a payment of 60 per cent. in cash from the proceeds of the loan, the balance of their indebtedness to be postponed to the lien of the Reconstruction Finance Corporation mortgage. The prayer of the petition is that this new plan or amended plan be referred to a master for hearing and that all further hearings be stayed pending its consideration, with notice to all parties in interest.

Neither this petition nor the letters from individual bondholders which the petitioner has submitted to the court give any real hope that a majority of any class of creditors could be obtained in favor of any new plan along the lines suggested. It seems quite clear that all that could be expected would be a protracted delay, as a result of which some creditors might be willing to sacrifice valuable rights in order to obtain a final settlement. The power of the court to disregard a depository agreement, by virtue of the last clause of subsection (b) of section 77B (11 U.S.C.A. § 207 (b), has been urged upon me. Obviously the authority conferred by that clause was intended to be exercised in the interest of the bondholders. But this petition comes from the debtor. Being convinced that these proceedings have demonstrated that the plan before me is the only one that can win the requisite assents and being satisfied that it is fair and equitable, if I were to set aside the provisions of the depository agreement in this case and resubmit the whole matter to a master, I should be acting, not in the interest of the bondholders, but of other parties.

An order may be presented dismissing the debtor's petition and confirming the plan.