## In re READING HOTEL CORPORATION.
### No. 18156.

District Court, E. D. Pennsylvania.

Oct. 20, 1938.

Edgar S. Richardson, of Reading, Pa., and William A. Schnader and Isaac A. Pennypacker, both of Philadelphia, Pa., for exceptants.

Robert T. McCracken and Mercer B. Tate, Jr., both of Philadelphia, Pa., opposed.

KIRKPATRICK, District Judge.

The Special Master has filed a very carefully considered report recommending allowance of compensation to certain parties and attorneys and disallowing the petitions of others. After careful examination of the questions raised by these exceptions, I have come to the conclusion that the report is correct in all respects. An order may be submitted embodying the Master's recommendations and dismissing all exceptions to his report.

The only matter that calls for any discussion is the petition of William A. Schnader, Esq., for allowance of a fee of $10,000 for services rendered as additional counsel for the debtor in prosecuting the debtor's appeal from the decree of the District Court confirming the plan of reorganization.

It is conceded by counsel for the objecting bondholders' committee that the services were rendered and that the charge is not unreasonable. The only question is whether it should be allowed as a charge against the assets of the reorganized corporation.

The employment of the petitioner to conduct the appeal was authorized by the Court upon an express reservation of the question whether any additional counsel fees should be allowed to him in respect of his services, and I believe it is correct

to say that he undertook the employment and rendered the services with full notice that the bondholders objected to and would resist payment of any additional fee.

The request is disallowed for the reason that the petitioner's services did not contribute in any way to the successful accomplishment of the debtor's reorganization.

The Circuit Court of Appeals in Steere v. Baldwin Locomotive Works, 3 Cir., 98 F.2d 889, decreed "that compensation may not be allowed under the act to anyone for services which have not contributed directly and materially to the successful accomplishment of the debtor's reorganization." [Page 891.] The word "anyone" was certainly intended to include counsel for the debtor as well as for creditors and security holders.

There is nothing technical about this rule and it calls for a common-sense application. It will not be of much value if the Court which comes to apply it concerns itself with such legal fictions as "the debtor corporation" and "the reorganized corporation" rather than with the real parties in interest, or if it be imagined that a "fair" reorganization can be accomplished by giving corporate assets to investors whose interests have been long since lost beyond hope of rehabilitation.

This petition under section 77B, 11 U. S.C.A. § 207, was originally filed by the debtor in order to stave off a mortgage foreclosure which had already been begun. The moving parties were, of course, the stockholders. The corporation was insolvent, and all of its tangible assets were more than covered by the two mortgages.

Rather than have the petition dismissed (which they could have done by simply refusing to approve any plan of reorganization) the bondholders adopted the procedure so offered, because it was one way of acquiring the property and at the same time it afforded an opportunity to make adjustments between the holders of the first and second mortgage bonds. The decree of this Court of April 1935, 10 F. Supp. 470, definitely and finally established the debtor's insolvency and the fact that the property was not worth the mortgage liens; and the right of the bondholders to take the property upon such mutual arrangement as they could agree upon, to the entire exclusion of any right on the part of the stockholders to participate, followed as a corollary.

Thereafter the reorganization problems had to do almost exclusively with adjustment of interests in the property between the first and second mortgage bondholders, and with providing the necessary capital to make the plan feasible. The first of these problems was solved without much difficulty, and the second solved itself by reason of the fact that the hotel began to earn money and there was plenty of cash available.

The stockholders resisted this procedure at every possible point. They were determined to force the bondholders to yield them some interest in the property and the bondholders were equally determined to concede nothing. The contest was, of course, carried on under the theory that both parties were endeavoring to set up a "fair" plan of reorganization. The real contest, however, was as stated. The bondholders' views as to their rights were upheld by the Court and a plan was confirmed which vested the property in them and eliminated the stockholders. D.C., 15 F.Supp. 527.

In the appeal from this decree, Reading Hotel Corporation v. Protective Committee, 3 Cir., 89 F.2d 53, the petitioner represented the debtor corporation on the record, but the only parties who could have received any benefit from his services were the stockholders. The main point upon the appeal was that 77B could not be used as a substitute for mortgage foreclosure and that the whole plan was illegal and therefore "unfair."

If the petitioner had succeeded in having the decree of this Court reversed and the plan disapproved, what would probably have happened is that the bondholders would have stood pat, refused to agree to any plan of reorganization, foreclosed the mortgage in the state court and taken the property over. If that had occurred it would have been rather hard to argue that the petitioner's legal services deserved compensation as contributing to a successful reorganization. What the stockholders hoped to gain from the appeal, if it succeeded, was that the bondholders, faced by a new proceeding to foreclose and by more delay and more expense, might possibly concede them some interest. It was a very faint and remote possibility, however, in view of the position which the bondholders had consistently taken, and in view of the fact that there never was a time when they were

not in a position to take over the property, one way or another.

If this fee is allowed the bondholders will have to pay it, and if the foregoing is a correct view of the situation it would be grossly unfair to them to compel them to.

It is not intended to rule that compensation can never be allowed for services rendered in opposing a successful and confirmed plan of reorganization, or that services which produce no change in the plan of reorganization as confirmed must necessarily be uncompensated for.

Even in this reorganization it is possible to think of circumstances under which an attorney representing the debtor might be entitled to compensation, even though he unsuccessfully opposed the plan. Such condition might arise in a case where the management of the debtor, from a disinterested standpoint, believes the plan of reorganization to be not feasible by reason of lack of capital or for any other reason, and employs counsel to resist the plan upon those grounds and to point out its defects to the Court. Such services might be really useful and a genuine contribution to the reorganization even though they did not result in anything tangible. This case is quite otherwise.