75 F.2d 256 (1935)
In re CENTRAL FUNDING CORPORATION.
UNION TRUST CO. OF MARYLAND
v.
WAGNER et al.
No. 257.
Circuit Court of Appeals, Second Circuit.
February 11, 1935.
*257 Niles, Barton, Morrow & Yost, of Baltimore, Md., and Kaye, Scholer, Fierman & Hays, of New York City (Carlyle Barton and George S. Yost, both of Baltimore, Md., and Jacob Scholer, of New York City, of counsel), for appellant Union Trust Co. of Maryland.
Hays, Wolf, Kaufman & Schwabacher, of New York City, and Emory, Beeuwkes, Skeen & Oppenheimer, of Baltimore, Md. (Ralph Wolf and Edwin D. Hayes, both of New York City, and Reuben Oppenheimer, of Baltimore, Md., of counsel), for appellees reorganization managers, creditors, Abraham P. Wagner, as trustee, and others.
Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.
AUGUSTUS N. HAND, Circuit Judge.
This is an appeal from an order confirming a plan of reorganization of Central Funding Corporation which was proposed in the above proceeding instituted under section 77B of the Bankruptcy Act (11 US CA § 207). The proceeding was a step in a general plan of reorganization of real estate securities guaranteed by the National Surety Company. The only person appealing from the order of confirmation is Union Trust Company of Maryland, which is not a creditor, but a trustee under a trust indenture that Central Funding Corporation had made in order to facilitate the issue of its bonds and the deposit of the security therefor. The general plan not only dealt with the securities of the Central Funding Corporation but with those of other similar companies, the obligations of which were guaranteed by the National Surety Company. The National Surety Company was, among other things, engaged in the business of guaranteeing mortgage bonds, notes, and other real estate securities, or the underlying collateral, issued by approximately twenty-two mortgage companies. It was finally taken over by the New York superintendent of insurance for rehabilitation at a time when about $45,000,000 face value of such securities were in the hands of the public. The superintendent prepared and promulgated a general plan for its reorganization that provided for the reorganization of all the companies the bonds or collateral of which the surety company had guaranteed. This plan was approved by the New York Supreme Court.
When the various mortgage companies that had issued guaranteed securities became involved in financial difficulties, the Central Funding Corporation was formed by the National Surety Company, in order to extend the maturities of bonds which the latter had guaranteed and in general to facilitate refunding operations. The surety company subscribed for all the capital stock of the funding corporation, paying *258 more than $1,000,000 in cash therefor, and was its sole stockholder. The proceeds of these cash subscriptions to the stock were invested in bonds, mortgages, and real estate. The bonds of the Central Funding Corporation itself were issued under the trust indenture of which the Union Trust Company of Maryland was trustee. They were secured by bonds and mortgages of the other mortgage companies which were assigned to the trust company, as the funding corporation took up guaranteed obligations that the surety company became obliged to meet. The surety company guaranteed both the bonds and the collateral of the Central Funding Corporation. While the face value of its bonds in the hands of the public was upwards of $8,400,000, the collateral held by the trust company at the time the present plan of reorganization was proposed had, owing to shrinkage in real estate values, become worth about $1,400,000 less than this amount. In other words, the Central Funding Corporation had become insolvent.
The present proceeding for a reorganization under section 77B of the Bankruptcy Act was filed by certain creditors of the Central Funding Corporation and by a committee of reorganization managers after that section became a law. The Union Trust Company of Maryland, as trustee under the trust indenture, intervened in order to protest against the proposed plan and filed objections thereto which were overruled. The plan was confirmed in the District Court shortly after the general plan for the reorganization of the surety company had been approved by the New York Supreme Court.
The petition in the present proceeding prayed that the proposed plan of reorganization of the Central Funding Corporation be approved. It set forth that the latter corporation was insolvent and unable to meet its obligations; that chancery receivers had been appointed in the chancery court of the state of Delaware where the debtor was incorporated; that its bonds and certain collateral thereto, which the National Surety Company had guaranteed, were in default; and that the surety company was unable to make good its guaranties.
The order of confirmation decreed that the debtor was insolvent; that the bondholders deliver their bonds to the National Bondholders' Corporation, which had been organized to carry out the general plan for the reorganization of the surety company; that the trustee in this proceeding transfer to the Bondholders' Corporation the assets of the debtor in his hands; and that the Union Trust Company of Maryland, as trustee under the trust indenture, transfer to the Bondholders' Corporation (subject to a lien securing the payment of its expenses) the collateral in its possession.
Under the plan for reorganizing the Central Funding Corporation, the holders of its bonds are to receive in exchange for their securities participation certificates in the National Bondholders' Corporation entitling them to share in the proceeds of the particular assets that are allocable to their respective bonds, with interest at a rate of 1 per cent. less than that reserved in the original bonds. Distributions are to be made by the Bondholders' Corporation to the holders of participation certificates as funds become available; each certificate holder is to receive the net proceeds of the collateral that secured his original bonds, and the liquidation is to be completed within five years, but that time may be extended by the Bondholders' Corporation, in its discretion, to ten years. The plan is a part of the general plan for the reorganization of the surety company, and is calculated to secure unified management of the shrunken assets of the many mortgage companies involved in the situation.
The participation certificates, issued by the Bondholders' Corporation and exchanged for the original bonds, are not fixed obligations, but are securities entitling each holder to share in the particular assets applicable to his claim as and when liquidated. The general plan and the plan for liquidating the assets of the debtor avoid the expense, delay, and hardship of instituting suits to foreclose thousands of small mortgages on real estate in some thirty-five states of the Union held by trustees under trust mortgages as security for bonds in the hands of the public.
The plan under consideration by us was accepted by 94 per cent. of the face amount of issues outstanding and was objected to in the court below by only one creditor, who has, however, taken no appeal from the order of confirmation. The Union Trust Company of Maryland as trustee under the trust indenture has raised two objections to the order, and contends that:
(1) Section 77B does not extend to property conveyed by a debtor to and in the possession of a trustee under a deed of trust in cases where the debtor is insolvent and has no real interest in the property conveyed, *259 but it embraces only reorganizations in aid of embarrassed debtors and not a mere liquidation of assets such as is designed by the plan in question.
(2) The court may not, in derogation of the rights of nonassenting creditors, cause possession and title to be taken from the trustee under the trust mortgage, or order the collateral to be transferred to a new corporation on terms substantially at variance with those under which it was originally deposited.
The appellant, Union Trust Company of Maryland, in no way challenges the fairness or equity of the plan, but takes the position that "no matter how laudable may be the objects sought to be accomplished * * * it is doubtful * * * whether they can be accomplished through the proposed plan of reorganization." It wishes to preserve its own business as trustee under the trust mortgage and also to protect itself from claims that may be asserted by bondholders who have not assented to the plan if it shall surrender to National Bondholders' Corporation the collateral securing their bonds, as directed by the District Court.
The appellant earnestly contends that the plan is not a reorganization within the meaning of section 77B. We cannot, however, doubt that it is within the general meaning of the term "reorganization." In common parlance that term is not limited to cases where the rights of all persons interested in a corporation, whether lienors, general creditors, or stockholders, are made to survive under some new corporate arrangement. Not infrequently the rights of some of these classes have become so worthless that they deserve and receive no recognition in the reorganization. Judge Baker recognized this when he said in his opinion in Investment Registry v. Chicago & M. E. R. Co. (C. C. A.) 212 F. 594, 609, that:
"`Reorganization' * * * means, usually, that the equity of the stockholders, if any ever existed in actual value, has vanished; that the property virtually belongs in equity to the bondholders; and that, if the bondholders will combine for the mutual protection of their equal interest, they will have a practical monopoly of the bidding."
A "reorganization" does not necessarily presuppose the survival of the rights of stockholders or even of junior creditors, when they have become worthless, but may be a readjustment of the rights of lienors under a new corporate structure. While this has generally been effected through foreclosure sales, such has not always been the method, and section 77B was evidently inserted in the Bankruptcy Act in order, among other things, to facilitate corporate readjustments without the delay, complexity, and difficulty inherent in the cumbersome methods that were formerly regarded as necessary.
The appellant argues that the proposed plan is a mere liquidation and not a reorganization, because the bondholders of the debtor succeed to no stock interest and receive only participation certificates in a new corporation which entitle them to nothing but liquidating dividends. But the liquidation may cover as long a period as ten years and the corporate structure of the plan prevents that prompt liquidation, which ordinarily follows an adjudication in bankruptcy, and is designed to continue the former business, except that of investing in new mortgages, so that there may be a chance to recover more from the collateral over a longer period than would be possible if a speedy liquidation were had. Section 77B (b), Bankr. Act (11 USCA § 207 (b), provides that:
"(b) A plan of reorganization within the meaning of this section (1) shall include provisions modifying or altering the rights of creditors generally, or of any class of them, secured or unsecured, either through the issuance of new securities of any character or otherwise; (2) may include provisions modifying or altering the rights of stockholders generally, or of any class of them, either through the issuance of new securities of any character or otherwise. * * *"
Thus a plan of reorganization may or may not provide for an issuance of new securities to stockholders. The plan here does not recognize an equity which is of no value, and it arranges simply for the carrying on of the same business conducted by the Central Funding Corporation for a long enough period to enable the new corporation to liquidate advantageously the collateral that secured the bonds that were issued by the debtor. There is a continuity of the interests of the bondholders and other creditors.
To say that section 77B was only enacted for the benefit of corporations in embarrassed circumstances is to give it an interpretation quite contrary to its natural meaning.
A proceeding for a reorganization may be instituted by the debtor or creditors, as *260 was done here, and a creditors' petition may be filed not only where the corporation "is unable to meet its debts as they mature," but also where it "is insolvent." Section 77B (a), Bankr. Act (11 USCA § 207 (a). The language of section 77B (b) indicates that the reorganization may be had though no equity remains in the corporation.
The order directing the Union Trust Company of Maryland to transfer its collateral to the new corporation is fully warranted by subdivision (h) of section 77B (11 USCA § 207 (h) which states that "the property dealt with by the plan, when transferred and conveyed * * * to the other corporation * * * provided for by the plan, shall be free and clear of all claims of the debtor, its stockholders and creditors, except such as may consistently with the provisions of the plan be reserved in the order confirming the plan or directing such transfer and conveyance or retention, and the court may direct the trustee or trustees, or if there be no trustee, the debtor and any mortgagee, the trustee of any obligation of the debtor, and all other proper and necessary parties, to make any such transfer or conveyance. * * *"
Likewise clause 9 of subdivision (b), § 77B, Bankr. Act, 11 USCA § 207 (b), (9), states that the plan "shall provide adequate means for the execution of the plan, which may include the transfer of all or any part of the property of the debtor to another corporation * * * the distribution of assets among creditors or any class thereof, the satisfaction or modification of liens, indentures, or other similar instruments."
It seems evident from the foregoing that the order is fully in accord with the requirements of section 77B. But it is argued that the direction to the Union Trust Company of Maryland to surrender its collateral to the National Bondholders' Corporation, even if warranted by section 77B, is invalid (1) because section 77B, as it has been applied to the facts here, is not within the power granted to Congress by the Constitution (article 1, § 8, cl. 4) to establish "uniform laws on the subject of bankruptcies"; and (2) because, as so construed, it would violate the Fifth Amendment.
The scope of the power of Congress to establish "laws on the subject of bankruptcies" was defined by Fuller, C. J., in Hanover National Bank v. Moyses, 186 U. S. 181, 186, 22 S. Ct. 857, 860, 46 L. Ed. 1113, where the following remarks of Catron, J., in Re Klein, Fed. Cas. No. 7865, were quoted with approval:
"I hold, it extends to all cases where the law causes to be distributed the property of the debtor among his creditors; this is its least limit. Its greatest is the discharge of a debtor from his contracts. And all intermediate legislation, affecting substance and form, but tending to further the great end of the subject,  distribution and discharge,  are in the competency and discretion of Congress. With the policy of a law letting in all classes,  others as well as traders,  and permitting the bankrupt to come in voluntarily, and be discharged without the consent of his creditors, the courts have no concern; it belongs to the lawmakers."
The provisions of section 77B which allow a readjustment of creditors' rights or a modification of the capital structure of a corporation upon consent of two-thirds of the creditors and confirmation of a plan of reorganization by the court do no more than apply the principles of composition in a way found practically desirable. Compositions may be had both with and without an adjudication and have long been held lawful. Cumberland Glass Co. v. DeWitt, 237 U. S. 447, 35 S. Ct. 636, 59 L. Ed. 1042. In a composition, the distribution to creditors need not be wholly in cash. In re Isidor Klein, Inc. (C. C. A.) 22 F.(2d) 906. The new railroad reorganization act (Bankr. Act § 77, 11 USCA § 205) which closely resembles section 77B has been held constitutional and "even solvent persons may go through bankruptcy via the voluntary route." In re Chicago, Rock Island & Pacific Railway Co. (C. C. A.) 72 F.(2d) 443, 450; Hanover National Bank v. Moyses, 186 U. S. 181, 22 S. Ct. 857, 46 L. Ed. 1113.
Bankruptcy laws are designed primarily to distribute equitably the property of a debtor among his creditors. While in the past the distribution has generally been effected through foreclosure or other sales, there is no inherent necessity for such a process of liquidation. Under the Bankruptcy Act, before section 77B was added to it, sales of mortgaged property in the possession of a trustee were authorized to be made free of incumbrances, even though the value of the property was less than the amount of the lien, or though the amount of the lien had not been ascertained. Van Huffel v. Harkelrode, 284 U. S. 225, 227, 52 S. Ct. 115, 76 L. Ed. 256, 78 A. L. R. 453; *261 In re Franklin Brewing Co. (C. C. A.) 249 F. 333; In re Loveland (C. C. A.) 155 F. 838.
Section 77B and the plan proposed under it do not violate the Fifth Amendment, either with respect to due process or otherwise.
In Gilfillan v. Union Canal Co., 109 U. S. 401, 3 S. Ct. 304, 27 L. Ed. 977, a special act of the state of Pennsylvania, whereby a plan to refund a corporate indebtedness through an issue of new securities was to be binding on bondholders who did not file their dissents within three months, was held not to impair the obligation of contracts. Similarly in Canada Southern R. Co. v. Gebhard, 109 U. S. 527, 3 S. Ct. 363, 27 L. Ed. 1020, a Canadian statute provided for a reorganization upon the consent of two-thirds of the stock and three-quarters of two classes of bonds by an exchange of bonds secured by a new mortgage for former securities. The Supreme Court said, at page 536 of 109 U. S., 3 S. Ct. 363, 369: "In no just sense do such governmental regulations deprive a person of his property without due process of law." The New York Court of Appeals, in sustaining a reorganization under the Schackno Act (Laws 1933, c. 745, as amended), reached a similar conclusion. Matter of People by Van Schaick v. Title & Mortgage Guarantee Co., 264 N. Y. 69, 190 N. E. 153. Our decisions in Matter of Allied Owners Corporation, Debtor, 74 F.(2d) 201, on December 10, 1934, and in Re Prudence Bonds Corp. (Ex parte Radin), 75 F.(2d) 262, handed down herewith, each dealt with section 77B, and are also to the same effect. The proposed plan provides a fair equivalent for any rights the bondholders have lost. Such a deprivation is no more than what is in substance involved in any bankruptcy administration and in no way transcends the Fifth Amendment.
It makes no difference whether the debtor has an equity of any value or not, or whether his business is to continue for five or ten years or indefinitely. The most frequent occasion for a reorganization is where only creditors' rights are to be adjusted and liquidation is to be slow enough to take advantage of market conditions obtaining over a long period. Section 77B expressly provides for such situations as we have here, and they are proper subjects of bankruptcy legislation. To restrict the act to reorganizations where the debtor has an equity, would be to deprive the section of much, if not most, of its usefulness.
We hold that the plan of reorganization of Central Funding Corporation was rightly approved, and affirm the order appealed from accordingly.