**STANDARD GAS & ELECTRIC CO. v. DEEP ROCK OIL CORPORATION et al. (two cases).**

Nos. 2143, 2195.

Circuit Court of Appeals, Tenth Circuit.

Jan. 13, 1941.

A. Louis Flynn, of Chicago, Ill., Jacob K. Javits, of New York City, Wilbur J. Holleman, of Tulsa, Okl., and Selig J. Levitan, of New York City, for appellant.

Chester T. Lane, Gen. Counsel, Bernard D. Cahn, Homer Kripke, and Irving S. Rogers, Attys., Securities and Exchange Commission, all of Washington, D. C., for appellees.

George S. Ramsey, Villard Martin, and Garrett Logan, all of Tulsa, Okl., James F. Oates, Jr., and George W. Ball, both of Chicago, Ill., Valjean Biddison, of Tulsa, Okl., Jason L. Honigman, of Detroit, Mich., Sidley, McPherson, Austin & Burgess, of Chicago, Ill., Milsten & Milsten, of Tulsa, Okl., Sempliner, Dewey, Stanton & Honigman, of Detroit, Mich., and Ramsey, Martin & Logan, of Tulsa, Okl., for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

This is a proceeding[1] brought by Deep Rock Oil Corporation[2] for reorganization under §§ 77A and 77B of the Bankruptcy Act, 11 U.S.C.A. §§ 206, 207.

On May 28, 1940, the trial court entered its order approving the second amended plan of reorganization, dated November 29, 1939, filed December 5, 1939, as modified May 20, 1940. On July 24, 1940, the court entered its order confirming the second amended plan of reorganization as modified on May 20, 1940. Standard Gas and Electric Company[3] has appealed from those orders and the appeals have been consolidated in this court.

I. Is the Plan Fair and Equitable?

Standard is the owner of 969 shares of the preferred stock of the debtor.

The plan provides for the organization of a new corporation and for issuance by it of twelve-year sinking fund debentures, dated January 1, 1940, bearing interest at the rate of 6 per cent per annum, aggregating $5,500,000, and of 400,000 shares of common stock without par value.

It provides for the payment in cash of general claims aggregating $60,000. It further provides for the payment to the holders of convertible gold notes,[4] of $500,000 in cash and for the distribution to them of the new notes and 75 per cent of the new common stock. It provides for the distribution to the holders of 7 per cent cumulative, convertible preferred stock without par value, aggregating 50,000 shares, 25 per cent of the new common stock.

The appraisal of the debtor's assets as of November 30, 1939, showed a valuation of $16,250,000. Interim distributions were made pursuant to orders of the court to the noteholders aggregating $2,400,000. The trustee filed a report on July 24, 1940, fixing the value of the debtor's assets as of May 31, 1940, at $15,240,415. In the orders here challenged, the court found that the trustee's valuation reports and appraisals correctly reflected the going concern value of the assets of the debtor. Standard does not challenge those findings here. Approved claims of general creditors aggregate $60,000 and under the plan are to be paid in cash. The estimated cost of administrative expenses is $500,000. This leaves $14,680,415, for distribution to the noteholders and the preferred stockholders. The book value of the common stock on the basis of the above figures is $8,680,415.[5]

The claims of the noteholders as of May 31, 1940, aggregated $14,350,000. They have received, as interim distributions, $2,400,000. Under the plan, they will receive

---

[1] It has been before this court on two previous appeals. See Taylor v. Standard Gas & Electric Co., 10 Cir., 96 F.2d 693, Id., 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669; In re Deep Rock Oil Corporation, 10 Cir., 113 F.2d 266.

[2] Hereinafter referred to as the debtor.

[3] Hereinafter referred to as Standard.

[4] These notes are for the principal sum of $10,000,000, bore interest at 6 per cent per annum, were due March 1, 1933, and were extended to March 1, 1937, with interest at 7 per cent per annum.

[5] 

| Appraised value of debtor's assets as of May 31, 1940 | | $15,240,415 |
|---|---|---|
| Interim cash distributions | $ 2,400,000 | $17,640,415 |
| Deductions under plan | | |
| General claims to be paid | 60,000 | |
| Cash distributions already made to noteholders | 2,400,000 | |
| Cash distributions to be made to noteholders | 500,000 | |
| New notes to noteholders | 5,500,000 | |
| Estimated reorganization expenses | 500,000 | 8,960,000 |
| Book value of new common stock | | $ 8,680,415 |

new notes aggregating $5,500,000, $500,000 in cash, and new common stock of the book value of $6,510,311. If we accord the stock its book value, they will receive in cash and securities $560,311 in excess of their claims.[6]

But in lieu of cash, they are receiving for $11,450,000 of their claims, twelve-year notes aggregating $5,500,000 and common stock of the book value of $6,510,311. That is to say, they are extending the time of payment on $5,500,000 of their claims and accepting a junior security for $5,950,000 of their claims. The noteholders are entitled to compensation for the loss of priority. Mr. Finletter in his work, The Law of Bankruptcy Reorganization, 1939, says, "if a debtor has outstanding common stock, preferred stock and debt, the securities given to the creditors (in the absence of some quid pro quo) must not only be senior to those given to the preferred stock, but the seniority must be for the full principal and accrued unpaid interest of the debt."

In its advisory report, filed April 29, 1940, the Securities and Exchange Commission approved the second amended plan of reorganization before the modification of May 20, 1940, as fair and equitable, although it only provided for a distribution of 20 per cent of the new common stock to the preferred stockholders, and by its supplemental advisory report, filed May 27, 1940, the Securities and Exchange Commission approved the second amended plan as modified May 20, 1940.

While the noteholders, if the common stock be accorded its book value, will receive $560,311 in excess of their claims, we do not think that excess more than compensates them for their loss of priority. We conclude that the plan is fair and equitable to the preferred stockholders.

## II. Was Standard Entitled to Participate as a Creditor?

This court held in Re Deep Rock Oil Corporation, 10 Cir., 113 F.2d 266, that the claims of the noteholders and the preferred stockholders exceeded in amount the value of the assets of the debtor and that Standard was not entitled to participate in any plan of reorganization unless, before the final consummation of the plan, the assets of the debtor should so increase in value that there would be a substantial equity to be applied to the satisfaction of Standard's claim.

In its order of February 29, 1940, and again in its order of July 24, 1940, the trial court expressly found that the assets of the debtor were not sufficient in value to satisfy in full the claims of the noteholders and the preferred stockholders. It follows under our holding in Re Deep Rock Oil Corporation, supra, Standard is not entitled to participate.

## III. Was the Plan Validly Accepted?

Sec. 179 of the Chandler Act, 11 U.S.C.A. § 579, provides that after a plan has been accepted in writing by or on behalf of creditors holding two-thirds in amount of the claims filed and allowed of each class, and, if the debtor has not been found to be insolvent, by or on behalf of stockholders holding a majority of the stock of each class, of which proofs have been filed and allowed, exclusive of creditors or stockholders or any class of them who are not affected by the plan, the judge shall fix a hearing for consideration of the confirmation of the plan.

Sec. 209 of Art. IX of the Chandler Act, 11 U.S.C.A. § 609, provides that "Any creditor or stockholder may in a proceeding under this chapter act in person, by an attorney at law, or by a duly authorized agent or committee." Under the terms of the deposit agreement dated August 9, 1934, as amended, and as originally approved by the trial court on August 20, 1934, a security holder, by depositing his security with the Reorganization Committee, conferred upon that committee adequate power to accept a plan of reorganization on his behalf.

The deposit agreement provides that the plan may be changed or modified in the manner provided in the bankruptcy act either before or after confirmation. But, if in the opinion of the court the change or modification will adversely affect the interest of any depositor, the Committee shall give notice thereof to such depositor in

| 6 Claims of noteholders as of May 31, 1940.... | | $14,350,000 |
|---|---|---|
| Interim distributions received ............. | $2,400,000 | |
| New notes .............. | 5,500,000 | |
| Cash .................... | 500,000 | |
| 300,000 shares no par common stock of the book value of........... | $6,510,311 | $14,910,311 |
| Excess in cash and book value of securities over claim....... | | $ 560,311 |

the manner provided in the agreement and the depositor may, within a period of time fixed by the court, withdraw his acceptance and deposited securities and that every depositor having such right of withdrawal who shall not exercise it within the period so fixed shall be irrevocably and conclusively deemed to have accepted the plan as changed or modified.

The original plan of reorganization filed in August, 1934, was accepted by 82 per cent in amount of the noteholders and approximately 60 per cent in amount of the preferred stockholders. They manifested their acceptance by expressly assenting to and accepting the plan in their letters transmitting their securities to the Reorganization Committee.

By the order of May 28, 1940, the depositing security holders were given until June 22, 1940, to withdraw their deposit of securities without expense to them should they not approve the second amended plan of reorganization as modified May 20, 1940.

In accordance with the order of May 28, 1940, the Reorganization Committee, within five days from the date thereof, mailed to each of the creditors and preferred stockholders of the debtor known to the committee, a copy of the second amended plan of reorganization as modified May 20, 1940, summaries of the plan and order of May 28, 1940, the advisory report and supplemental advisory report of the Securities and Exchange Commission, and a communication advising them that they might, without expense to them, withdraw their deposited securities by a written request so to do filed with the committee, and that should they not withdraw their deposited securities on or before June 22, 1940, they should be deemed to have assented to and accepted the plan.

Pursuant to the order of May 28, 1940, the trustee, within ten days from the date thereof, caused a notice directed to the creditors and preferred stockholders of the debtor to be published in newspapers of general circulation, at Tulsa, Oklahoma, Chicago, Illinois, New York City, New York, and Philadelphia, Pennsylvania, advising such creditors and stockholders of the filing of the second amended plan as

modified, that such plan could be accepted by deposit of securities with the Reorganization Committee, by failure to withdraw securities on deposit with such committee on or before June 22, 1940, or by filing a written acceptance thereof with the trustee and that they might withdraw deposited securities without expense to them on or before June 22, 1940, by filing with the Reorganization Committee a written request for such withdrawal.

On May 28, 1940, there were deposited with the Reorganization Committee notes in the principal amount of $8,611,000 and 31,676 shares of preferred stock. Between that date and June 22, 1940, there were withdrawn from deposit, notes of the principal amount of $31,000 and 979 shares of preferred stock. Subsequent to May 28, 1940, additional deposits were made so that there were on deposit with the Reorganization Committee on July 22, 1940, notes of the principal amount of $8,710,000 and 32,143 shares of preferred stock. In their letters of transmittal of securities to the Reorganization Committee deposited after May 28, 1940, each depositing security holder expressly assented to and accepted the second amended plan of reorganization as modified May 20, 1940.

In addition, holders of notes of the principal amount of $75,000 and holders of 4,105 shares of preferred stock, not deposited with the Reorganization Committee, filed with the trustee written acceptances of the second amended plan of reorganization as modified May 20, 1940. The Reorganization Committee as the duly authorized committee of the depositing security holders accepted the second amended plan as modified May 20, 1940. Thus, it was accepted by 72 per cent of the preferred stockholders and 88 per cent of the principal amount of the notes.

We are of the opinion, therefore, that the second amended plan of reorganization as modified May 20, 1940, was accepted by or on behalf of two-thirds in amount of the creditors and by stockholders holding a majority of the stock who are affected by the plan as required by § 179 of the Chandler Act.

Furthermore, the trial court in the order of May 28, 1940,[7] found that it was not

---

[7] That order in part reads as follows: "The acceptances of the former Plans of Reorganization, including the acceptances by the holders of the debtor's gold notes and preferred stock of the Amended Plan of Reorganization, as modified,

practicable to apply § 179 of the Chandler Act in this proceeding, if so to do would require the execution and filing of acceptances personally by the creditors and preferred stockholders, of the second amended plan as modified.

Sec. 276, sub. c(2) of the Chandler Act, 11 U.S.C.A. § 676, sub. c(2) provides the provisions of §§ 77A and 77B shall apply to proceedings thereunder where the petition was approved more than three months before the effective date of the Chandler Act, to the extent that the judge shall deem their application practicable.

### IV. The Prices Paid for Securities by the Holders Thereof.

In the order of July 24, 1940, the court found that it would be impracticable to require the holders of securities to file statements showing the prices paid therefor, due to the number of securities outstanding and the extent of public dealing therein. There is no showing that this finding is not fully justified. Furthermore, the filing of such statements would not have benefited Standard. In the absence of fraud, the prices which security holders pay for their securities do not affect the measure of their participation under the plan of reorganization.[8]

We conclude that the appeals are without merit and the orders are, therefore, affirmed.

confirmed by the order of this court entered February 3, 1937, have heretofore been duly filed in this court and have been acceptances in writing and the court hereby orders and decrees that if such former acceptances in writing, evidenced by the deposit of securities with the Reorganization Committee and its depositaries, accompanied by letters of transmittal, are not withdrawn within the period and in accordance with the terms fixed by this order, they shall be considered, upon presentation to the court hereafter, to be and are hereby declared, ordered and found to be acceptances in writing of the said Second Amended Plan of Reorganization, as modified; it being further found, ordered and declared that it is not practicable to apply Section 179 of Chapter X of the Bankruptcy Act, as amended, to this proceeding if to do so will require the execution and filing in this court by every creditor and stockholder of the debtor who desires to assent to and accept said Second Amended Plan, as modified, of a new and additional acceptance in writing and the order heretofore entered herein on January 8, 1940, applying said Section 179 to this proceeding is hereby declared to be governed and superseded by the findings and directions herein contained."

[8] In re Radio-Keith-Orpheum Corporation, 2 Cir., 106 F.2d 22, 27;

In re Utilities Power & Light Corporation, D.C.N.D.Ill., 29 F.Supp. 763, 770;

In re Celotex Company, D.C.Del., 12 F. Supp. 1, 5;

Security-First Nat. Bank v. Rindge Land & Nav. Co., 9 Cir., 85 F.2d 557, 561, 107 A.L.R. 1240.

Texas Hotel Securities Corp. v. Waco Development Co., 5 Cir., 87 F.2d 395, 399.