### In re LORRAINE CASTLE APARTMENTS BLDG. CORPORATION, Inc.

### LORRAINE CASTLE APARTMENTS BLDG. CORPORATION, Inc., et al., v. MACHIEWICH et al.

### CASTELLANI et al. v. McNICHOLS et al.

Nos. 8591, 8597.

Circuit Court of Appeals, Seventh Circuit.

May 4, 1945.

---

56

John J. Yowell, Charles O. Loucks, and Austin L. Wyman, all of Chicago, Ill., for appellants.

Thomas B. Hart, G. Gale Roberson, and Edw. P. McGuire, all of Chicago, Ill., Roger S. Foster and Milton V. Freeman, both of Philadelphia, Pa., Wm. O. Burns, Jos. B. Lawler, Carl Pomerance, and Wm. Henning Rubin, all of Chicago, Ill., and Julian M. Meer, of Philadelphia, Pa., for appellees.

Before SPARKS and MINTON, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

These appeals attack two orders entered in a reorganization proceeding under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The first, on February 10, 1944, denied the petition of the debtor, its stockholders and one bondholder praying entry of an order limiting the amounts of the claims of certain bondholders who had acquired their securities after institution of the reorganization proceedings. The second, entered February 21, 1944, approved the report of the special master, overruled objections thereto, confirmed and approved the trustee's plan of reorganization and disapproved a plan proposed by the debtor.

The debtor corporation is the owner of an apartment building originally mortgaged for $100,000, $72,500 of which remains unpaid. On May 1, 1935, the bonds then outstanding in the amount of $85,900 became due. As a result of reorganization proceedings under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, their maturity was extended to May 1, 1942, and interest, waived for the first year, was fixed thereafter at 3% per annum until maturity. Otherwise the corporate structure and assets were undisturbed. Upon expiration of this extension period, April 30, 1942, debtor filed a petition for reorganization under Chapter X of the Bankruptcy Act. The judge approved the petition, leaving the debtor in possession until July 20, 1943, when he appointed a trustee. Angelo Castellani and Margaret Castellani owned all the corporate stock and Angelo managed the property until the trustee was appointed.

On August 12, 1942, debtor tendered a plan of reorganization under which the bondholders would eventually receive 70% of the amounts due them. The special master, to whom the plan was referred, reported that the offer was inadequate and recommended that the plan be disapproved unless the debtor would increase its offer to 85%. Debtor thereupon amended its plan, increasing its offer to 80% of the face amount of the bonds.

In the meantime, the individual traders had purchased on the open market, at prices ranging from 70 to 77¢ on the dollar, outstanding bonds constituting a majority of the entire amount remaining unpaid. These eventually came to appellee Bart, who owns $52,000 in principal amount for which he paid $46,800. Bart intervened and complete hearing was had before the special master on the charges of the debtor and its two stockholders that claims of purchasers of bonds should be limited in voting and in distribution to the amounts paid and that their claims should be reduced to such amounts. On January 16, 1943, the master

filed a supplementary report recommending that the debtor's plan be approved if the offer were increased to 85¢ on the dollar.

On July 20, 1943, the court removed the debtor from possession, appointed a trustee and directed him to prepare and file a plan for reorganization. On August 31, following, the trustee tendered a plan, which provided that the property be offered for sale at public auction for not less than $75,000; that the proceeds of sale and the cash on hand, after payment of expenses, be utilized to pay claims of bondholders in full of principal and interest and that the balance, if any, be paid to the stockholders. The trustee proposed that if the upset price could not be realized, a new corporation be formed to own and operate the property free and clear of mortgage, the capital stock of which would be issued to the bondholders. The upset price was based upon an appraisal made on August 20, 1943, by Paul A. Hazard, appointed by the court as an independent appraiser, valuing the property at $75,000. Shortly later the trustee received an offer of $75,000 accompanied by a deposit of $7,500, 10% thereof. On September 15, 1943, debtor filed an amended plan offering to pay 20% of the principal of the bonds immediately and the balance within five years with interest at 5% per annum.

The Master, in his final report, filed October 7, 1943, found that the debtor's plan was unfair and unfeasible in that it was lacking in compensatory treatment of the bondholders and required them to sacrifice a part of their interest and the extended debt would amount to 90% of the appraised value, would mature at the end of 5 years and might well result in another reorganization. He found further that the trustee's plan was fair and presented no question of lack of feasibility and recommended that it be approved.

The special master found, as to the objections of the debtor and its stockholders as to the bonds purchased pending the liquidation, that, though he did not approve generally the ethics reflected by speculation in such bonds, the evidence disclosed no cause for limitation of the amounts claimed by bondholders either for voting or distributive purposes. He pointed out specifically that the persons who had dealt in the bonds were not officials, directors or stockholders of the corporation; that they owed no fiduciary duty to the estate or its beneficiaries; that they were strangers to the proceedings, investors or speculators in securities who thought the bonds were selling too cheaply and that they might make a legitimate profit upon them. He found that there was no fraud. The District Court approved the report, in its order of February, 1944, finding the debtor's plan unfair and unfeasible and the trustee's plan fair and feasible, absence of fraud in the purchase of bonds during the pendency of the proceedings, and lack of fiduciary relationship upon the part of the intervening bondholders. In the meantime, the debtor and its stockholders had filed a petition praying entry of an order limiting the claims of purchasers during pendency of the proceedings to the amount actually paid by them. In the order of February 10, 1944, the court entered the first order appealed from denying this petition. The formal order approving the special master's report was entered on February 21, 1944, and is the subject matter of the second appeal.

■ Section 212, 11 U.S.C.A. § 612, Chapter X of the Bankruptcy Act, provides that the court may limit to cost claims acquired in the course of proceedings by attorneys, trustees under indentures, security-holders committees and others. These provisions are not applicable to third parties, to strangers or to any one who is under no fiduciary obligation toward any beneficiary of the trust. This was the decision under similar provisions of Section 77B(b); Security-First Nat. Bank v. Rindge Land & Navigation Co., 9 Cir., 85 F.2d 557, 562, 107 A.L.R. 1240; In re Indiana Central Telephone Co., D.C., 24 F.Supp. 342, 344; In the Matter of Point Building Land Co., 37 Am.Bankr.Rep., N.S., 464, 466; In re Celotex Co., D.C., 12 F.Supp. 1, 5; and the language of the amended act is even more clear in its provisions.

Under the order of reference, the special master had jurisdiction of the parties and of the subject matter and heard fully all the evidence relating to alleged fraud upon the part of the so-called speculators. He saw the witnesses, observed them upon the witness stand and made his findings and these the court approved. Indeed the evidence offered by the debtor and its stockholders failed utterly to establish any possible fraud upon the corporation or any of the beneficiaries of the estate.

■■ The debtor's obligation is to pay his debts. The property right of a bondholder is the right to receive from the debtor the entire amount the latter has

promised to pay. In the absence of some equitable reason, taking the case out of the ordinary rule, the prices which security holders pay for their securities in no wise affects the measure of their participation in reorganization or their voting power. Security-First Nat. Bank v. Rindge Land & Navigation Co., 9 Cir., 85 F.2d 557, 561, 107 A.L.R. 1240; In re Utilities Light & Power Corporation, D.C., 29 F.Supp. 763, 770; Standard Gas & Electric Co. v. Deep Rock Oil Corporation, 10 Cir., 117 F.2d 615, 619, certiorari denied 313 U.S. 564, 61 S.Ct. 842, 85 L.Ed. 1523; Mokava Corporation v. Dolan, 2 Cir., 147 F.2d 340. To reduce the participation to the amount paid for securities, in the absence of exceptional circumstances which are not present here, would reduce the value of such bonds to those who have them and want to sell them. This would result in unearned, undeserved profit ·for the debtor, destroy or impair the sales value of securities by abolishing the profit motive, which inspires purchasers. This is even more evident when the purchaser acquires a lawsuit when he buys a debt. He hopes to realize more than he pays and at the same time runs the risk of recovering less. If the claimants are limited to the amounts paid, the debtor will never offer to bondholders anything above the current price for the bonds. This would encourage the debtor to delay the plan for rehabilitation in the hope that he will be able to settle the claims against him at less than a fair amount. Such results are not in accord with the purposes of the legislation. Security-First Nat. Bank v. Rindge Land & Navigation Co., 9 Cir., 85 F.2d 557, 563, 107 A.L.R. 1240; Mokava Corporation v. Dolan, 2 Cir., 147 F.2d 340. We conclude that there is no basis upon which we could sustain any objection to the finding of fact that the claims of bondholders are without fraud. Accordingly, the order entered was entirely proper.

■ But appellants argue that they have not had their day in court; that they filed a petition which the court dismissed without hearing. If this were a fact, of course their complaint would be well founded. But the record discloses that the court had already made an adjudication of the issues involved before this petition was filed. That petition presented no question which had not previously been fully considered by the master at the hearing on the trustee's plan and objections thereto. Thus the trustee's plan provided for no limitation upon the claims for any bondholder. Among the objections interposed by appellants was one that the claims were fraudulent and should be limited to the amounts paid and that they be specifically held not entitled to vote on any plan. The issue was drawn, evidence presented, and a decision made. When the court approved the master's report in this respect, he completely adjudicated all the issues raised and presented by the petition. Therefore, it was properly denied.

■ Appellant insists that a plan of reorganization may not properly contemplate a sale of the debtor's property. Section 216(10) of the Bankruptcy Act, 11 U. S.C.A. § 616(10), provides that a plan of reorganization "shall provide adequate means for the execution of the plan, which may include: the retention by the debtor of all or any part of its property; the sale or transfer of all or any part of its property to one or more other corporations theretofore organized or thereafter to be organized; the merger or consolidation of the debtor with one or more other corporations; the sale of all or any part of its property, either subject to or free from any lien, at not. less than a fair upset price and the distribution of all or any assets, or the proceeds derived from the sale thereof, among those having an interest therein."

Here we find express authority for a plan of reorganization which contemplates the sale of all or any part of its property either free or subject to any lien at not less than a fair upset price. We know of no reason why, inasmuch as Congress has granted authority to approve a plan of such character, it should not be approved where it is found to be fair and feasible. Obviously sale and distribution of the proceeds amount to liquidation, but it is none the less within the definition of reorganization permitted by the Act of Congress and is in accord with the remedial provisions enacted by Congress. Country Life Apartments, Inc. v. Buckley, 2 Cir., 145 F.2d 935, 938; In re Porto Rican American Tobacco Co., 2 Cir., 112 F.2d 655. It was held under Section 77B(b) (9) that a plan which looks to the ultimate liquidation is a plan of reorganization within the meaning of the Act. In re Central Funding Corporation, 2 Cir., 75 F.2d 256, 259; Clinton Trust Co. v. John H. Elliott Leather Co., 2 Cir., 132 F.2d 299, 304.

Fidelity Assurance Association v. Sims, 318 U.S. 608, 63 S.Ct. 807, 87 L.Ed. 1032, relied upon by appellants, we think, is not

applicable. The only question involved there was whether a petition instituting proceedings should be dismissed for failure to meet the statutory requirement that it must be filed in good faith. The court held that, in view of the fact that at the inception of the proceedings, it was obvious that the only possible accomplishment would be piecemeal liquidation as in ordinary bankruptcy, the petition was not filed in good faith. No such question is presented here. The original petition had been approved as filed in good faith. Our question is rather whether the plan of trustee, presented at the court's request, after continued failure of the debtor to propose a feasible plan, is fair and feasible and within contemplation of the Act of Congress. That question the court did not pass upon in the Sims case. This was pointed out in Country Life Apartments, Inc. v. Buckley, 2 Cir., 145 F.2d 935, 938, where the court, after discussing the criticism that the plan was one of complete liquidation, said: "Under these circumstances Fidelity Assurance Ass'n v. Sims, supra [318 U.S. 608, 63 S.Ct. 807, 87 L.Ed. 1032], does not apply, and the trustee's plan was properly approved and confirmed by the District Court as being within the language of Bankruptcy Act, § 216 (10), which provides that a plan of reorganization may include the sale of all or any part of the debtor's property at a fair upset price and the distribution of all or any assets among those having an interest therein. This conclusion is amply supported by our own decisions and those of other courts. In re V. Loewer's Gambrinus Brewery Co., 2 Cir., 141 F.2d 747; In re Lorraine Castle Apartments Bldg. Corporation, D.C. N.D.Ill., 53 F.Supp. 994. See also In re Central Funding Corporation, 2 Cir., 75 F. 2d 256, and In re Porto Rican American Tobacco Co., 2 Cir., 112 F.2d 655, both of which were distinguished and not disapproved in Fidelity Assurance Ass'n v. Sims, supra." Thus the United States Circuit Court of Appeals for the Second Circuit has obviously approved the reasoning of the District Court in the present proceedings, having cited that court's opinion. We think the trustee's plan clearly within the contemplation of Congress as expressed in Section 216(10).

■ Appellants argue that the only proper method of liquidation arises by virtue of Section 236, 11 U.S.C.A. § 636, which provides that if no plan shall be approved or consummated, the judge may enter an order either adjudging the debtor a bankrupt or directing that bankruptcy be proceeded with or dismissing the proceedings. But this is merely a further method of procedure, after all plans have failed, and contemplates not such a plan as the trustee proposed here but ordinary proceedings in bankruptcy where upset prices are not necessary and where liquidation may be piecemeal. There is nothing in this section which prohibits action in accord with Section 216(10).

The debtor procured a seven-year extension in 1935 accompanied by decrease in its interest rate. That seven-year extension having expired, the debtor offered to pay 70% of the face amount of the bonds. The master disapproved; the debtor raised its offer to 80% and only after the trustee had proposed a plan whereby secured claims were to be paid in full, did the debtor offer to pay 20% in cash and the balance at the end of five years. All this involved total extensions, if the debtor's plan were approved as of this date, of almost 15 years with no assurance that at the end of the period, another reorganization would not be necessary. Considering this picture as a whole and the findings of fact made by the court, in pursuance of the special master's recommendations, we can not say that the approval of the trustee's plan was not in compliance with the Act of Congress or in the interest of fairness and equity.

The orders are affirmed.