## In re PITTSBURGH RYS. CO.

### Nos. 9129, 9163.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 18, 1946.

Decided Dec. 31, 1946.
Writ of Certiorari Denied May 5, 1947.
See 67 S.Ct. 1309.

Thomas J. Munsch, of Pittsburgh, Pa. (C. Elmer Bown and Philip A. Fleger, both of Pittsburgh, Pa., on the brief), for appellant.

Samuel M. Koenigsberg, of New York City (Roger S. Foster, Solicitor, and Robert S. Rubin, Asst. Solicitor, both of Philadelphia, Pa., and George Zolatar, of New York City, on the brief), for Securities and Exchange Commission.

Maurice J. Dix, of New York City (Joseph Nemerov and Charles B. Prichard, both of Pittsburgh, Pa., and Aaron Schwartz, of New York City, on the brief), for Guggenheim and others.

Leon Wald, Asst. City Solicitor for City of Pittsburgh.

J. Henry O'Neill, of Pittsburgh, Pa. (J. Garfield Houston, Wells Fay and Blaxter, O'Neill & Houston, all of Pittsburgh, Pa., on the brief) for W. D. George, trustee.

Before ALBERT LEE STEPHENS, GOODRICH, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This appeal is from two orders of the District Court in reorganization proceedings of Pittsburgh Railways Company, the debtor. Cf. In re Pittsburgh Railways Co., 3 Cir., 155 F.2d 477, certiorari denied Philadelphia Co. v. City of Pittsburgh, 67 S.Ct. 90. Philadelphia Company, the appellant, is a holding company in the Standard Gas and Electric System. It is the parent of the debtor and of most of the underlier companies in the street railway system involved. It is also a large creditor of the debtor and of many of the underliers.

The order of November 7, 1945, D.C., 63 F.Supp. 7, directed the Trustee of the debtor to conduct an examination under Sections 21, sub. a, and 167 of the Bankruptcy Act, 11 U.S.C.A. §§ 44, sub. a, 567, for the purpose of determining whether the claims of Philadelphia Company should be limited or subordinated. That order was based upon undenied allegations in a petition of Jules Guggenheim, et al., setting out spoliation and waste of the debtor by Philadelphia Company as parent; domination and control of the debtor by Philadelphia Company to the detriment of the public shareholders; possible causes of action to the debtor's estate against Philadelphia Company and grounds for the equitable limitation or subordination of appellant's filed claims. There was no appeal from the order and the investigation is currently proceeding. On November 14, 1945 the Philadelphia Company moved to enlarge the scope of the inquiry to include "all holders of bonds, notes, securities or liabilities of the debtor" and "to all notes, bonds, securities or liabilities of the debtor whether or not such claims have been actually filed thereon." The motion was denied without prejudice by an order of the Court below, dated January 21, 1946, D.C., 64 F.Supp 231, on the ground that no facts were alleged showing that the requested investigation would be of value either in the preparation of a reorganization plan or in passing upon claims against the debtor. The appeal taken from that order by Philadelphia Company as a cautionary measure is presently before us as Number 9129. On March 6, 1946, Philadelphia Company filed another petition to the same effect as the first and stating that it was ready to offer evidence on all points at issue. This was denied without prejudice, May 1, 1946, on the grounds that the averments of the petition did not indicate that the enlargement of the investigation would be of value to the reorganization proceeding and that it does not appear practicable for the Trustee to investigate the claims not filed. Philadelphia Company appealed and it is this second appeal, Number 9163, which is pressed.

Appellant insists that it is inequitable to examine its claims without going further and ascertaining whether there are counter equities against the persons who would profit by the subordination of its claims. It urges primarily that the investigation should include ascertainment of whether the persons who would benefit by the limitation or subordination of Philadelphia Company's claims have a standing in equity to assert or profit by such action. In addition it maintains that inquiry should be made as to whether such persons are themselves subject to equitable limitation or subordination either with respect to the allowance to be made on their claims or regarding their rights to vote thereon. In line with these questions appellant asks that the identity of such persons be disclosed and that the existence of counter equities against them be examined. With reference to counter equities it states that special attention should be given to the time when the liabilities of the debtor were acquired, whether they were purchased with notice of the wrongdoing of which complaint is made and also the cost at which they were acquired. Appellant conceding that relevance is the criterion of the broadened inquiry desired contends that the elements it suggests of time, notice and cost are within that principle. It does not charge fraud or specifically any circumstances other than those mentioned.

Section 21 of the Bankruptcy Act gives the Court authority to order an investigation of "the acts, conduct, or property of a bankrupt." Section 167 provides in part:

"The trustee upon his appointment and qualification—

"(1) shall, if the judge shall so direct, forthwith investigate the acts, conduct,

property, liabilities, and financial condition of the debtor, the operation of its business and the desirability of the continuance thereof, and any other matter relevant to the proceeding or to the formulation of a plan, and report thereon to the judge."

In Taylor v. Standard Gas & Electric Co., 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669, the Supreme Court held that the note claims of Standard Gas, the parent corporation, should be subordinated to the preferred stockholders of its subsidiary in reorganization, Deep Rock Oil Corporation. The claimants, other than the parent in that case, were grouped together simply as preferred stockholders who had suffered serious detriment in the past, with no such distinctions as here attempted by appellant. After the case had been remanded to the District Court, Standard, on much the same theory as put forth by the present appellant, asked for investigation into the holdings of the public purchasers of Deep Rock securities. That public purchasers had notice of the question of subordination of Standard's claims is to be strongly inferred from the factual situation there presented. The refusal of the application by the District Court was affirmed by the Circuit Court of Appeals. Standard Gas & Electric Co. v. Deep Rock Oil Corporation, 10 Cir., 117 F.2d 615, certiorari denied 313 U.S. 564, 61 S.Ct. 842, 85 L.Ed. 1523. The Court said, 117 F.2d at page 619: "In the order of July 24, 1940, the court found that it would be impracticable to require the holders of securities to file statements showing the prices paid therefor, due to the number of securities outstanding and the extent of public dealing therein. There is no showing that this finding is not fully justified. Furthermore, the filing of such statements would not have benefited Standard. In the absence of fraud, the prices which security holders pay for their securities do not affect the measure of their participation under the plan of reorganization."

In Re Lorraine Castle Apartments Building Corporation, 7 Cir., 149 F.2d 55, certiorari denied Lorraine Castle Apartments Building Corporation, Inc., v. Mackiewich, 326 U.S. 728, 66 S.Ct. 35, the public had purchased bonds of a debtor during the latter's reorganization. The debtor maintained that such claims be limited in voting and in distribution to the amounts paid and that the claims be reduced to such amounts. The District Court denied the petition. The Circuit Court of Appeals in affirming that decision said, 149 F.2d at pages 57 and 58: "The debtor's obligation is to pay his debts. The property right of a bondholder is the right to receive from the debtor the entire amount the latter has promised to pay. In the absence of some equitable reason, taking the case out of the ordinary rule, the prices which security holders pay for their securities in no wise affects the measure of their participation in reorganization or their voting power (Citing cases). To reduce the participation to the amount paid for securities, in the absence of exceptional circumstances which are not present here, would reduce the value of such bonds to those who have them and want to sell them. This would result in unearned, undeserved profit for the debtor, destroy or impair the sales value of securities by abolishing the profit motive, which inspires purchasers. This is even more evident when the purchaser acquires a lawsuit when he buys a debt. He hopes to realize more than he pays and at the same time runs the risks of recovering less. If the claimants are limited to the amounts paid, the debtor will never offer to bondholders anything above the current price for the bonds. This would encourage the debtor to delay the plan for rehabilitation in the hope that he will be able to settle the claims against him at less than a fair amount. Such results are not in accord with the purposes of the legislation."

The facts in the Lorraine Castle decision may have been investigated as appellant states; nevertheless as revealed they are substantially the same as the acts ascribed to the public holders in this issue. It is further urged that the denial of the application for investigation of the Lorraine Castle public holders turned on the question of the impracticability of developing the information sought. That was an important element in the decision but, in addition, the Circuit Court of Appeals squarely held that in the absence of fraud, the prices paid for securities do not affect their participation value

in reorganization.[1] The case of Mokava Corporation v. Dolan, 2 Cir., 147 F.2d 340, reiterates this, saying at pages 344 and 345: "To reduce a creditor's participation in the plan to the amount he paid for his bonds (except in unusual circumstances not present here) would be harmfully to reduce the value of such bonds to those who previously owned them."

And see Security First National Bank of Los Angeles v. Rindge, 9 Cir., 85 F.2d 557, 107 A.L.R. 1240, certiorari denied 299 U.S. 613, 57 S.Ct. 315, 81 L.Ed. 452.

Under the sound authority of the above cases the alleged discount purchases of Pittsburgh Railways' securities during reorganization and with notice of the wrongdoing of Philadephia Company are not thereby either subject to subordination themselves or to counter equities barring them from profiting by the subordination of Philadelphia Company. The opinions cited by appellant are not persuasive to any contrary view. Among other decisions, appellant refers to In re Midland United Co., 58 F.Supp. 667, 681, where Judge Biggs sitting in the District Court and considering a proposed plan of reorganization for two corporations, stated that rather recent purchasers of securities and prior lien stock of one of the debtor companies had the right to be heard respecting the plan and that their objections required full consideration. He further said, "The fact that the objectors acquired their securities and stock with what must be deemed to be knowledge of existing litigation is, however, a fact which the court may weigh in determining their purpose." In that case a reorganization plan had been submitted and was then before the Court. The above quoted language has to do solely with the weight to be given objections to the plan by some of the public holders. In the present matter no plan has as yet been proposed and, at this time at least, investigation of the charges in appellant's petition is clearly irrelevant, for even if the charges were confirmed they would have no effect upon the subordination or limitation of either the claims of the public security holders or those of the appellant.

Since the charges against the public holders are themselves irrelevant, it follows that the identity of those persons in that group who have not filed their individual claims is immaterial. Appellant suggests that it is inequitable to allow them preferred standing. The filing of their claims by the Trustee is in strict accordance with the Bankruptcy Act, Section 198, and with the District Court's order of July 22, 1938. The preferred status complained of was not created by the action of the Trustee. It springs directly from the alleged unconscionable conduct of Philadelphia Company (which if established would subordinate or limit the latter's claims) and from the further fact that the appellant's charges contain nothing to prevent the unknown public bondholders from taking advantage of the situation brought about by Philadelphia Company's own acts.

The orders of the District Court are affirmed.

---

[1] The task of the trustee examining into all the bondholders of Pittsburgh Railways would be enormous. A large number of them have not filed individual claims. Under the District Court order of July 22, 1938 and Section 198 of Chapter 10 of the Bankruptcy Act, 11 U.S. C.A. § 598, this is not necessary unless they wish to vote on a reorganization plan. The debtor's bonds are widely held. They are on the open market and subject to changes of ownership. This might well result in some part at least of the proposed investigation being rendered useless. Viewed in the light of this complex, long drawn out reorganization, objection to such investigation as impractical would seem to have considerable merit despite appellant's offer to produce evidence to the contrary.