**In the Matter of GENERAL STORES CORPORATION, Debtor.**

United States District Court
S. D. New York.
May 2, 1957.

Charles H. Griffiths, White Plains, N. Y., trustee, Frederick P. Close, White Plains, N. Y., for trustee, Martin Drazen, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Lewis J. Ruskin, as trustee under collateral agreement and individually, Simon H. Rifkind, New York City, Harry H. Ruskin, Stephen Wise Tulin, Chicago, Ill., of counsel.

Kiva Berke, New York City, of counsel, for Securities and Exchange Commission.

Netter & Netter, New York City, for Florence Brill, a stockholder, Edward A. Rothenberg, New York City, of counsel.

Townsend & Lewis, New York City, for Stockholders Committee, John F. Davidson, New York City, of counsel.

Blumberg, Singer, Ross & Gordon, New York City, for creditors' committee. Samuel Gordon, New York City, of counsel.

Louis J. Weinshenker, New York City, for Richard Goodman, a creditor.

Richard Goodman, pro se.

Otterbourg, Steindler, Houston & Rosen, New York City, for General Stores Corp., Marks Paskes, New York City, of counsel.

LEVET, District Judge.

Petitioner, Lewis J. Ruskin, the representative of 100% of the secured creditors of the debtor, General Stores Corporation, renews his application for a vacation of the stay ordered by this court on May 1, 1956. On January 2, 1957, the original petition was denied without prejudice, with leave to renew if no feasible plan was proposed within the period fixed by this court. Matter of General Stores Corporation, D.C.S.D. N.Y.1957, 147 F.Supp. 350. The trustee of debtor has countered with a motion for an order fixing the time within which he shall prepare and file a plan or a report of his reasons why a plan cannot be effected and for a deferral of the hearing on the renewed petition of the secured creditors. The trustee also requests that a date be fixed for a simultaneous consideration of a plan and the said renewed petition.

On October 18, 1954, the debtor filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. It appears that Lewis J. Ruskin, the representative of the secured creditors, consented in writing to the filing of the Chapter XI petition and actively participated in the institution of such proceeding, although by a letter dated November 1, 1954, Mr. Ruskin stated that he reserved his rights with respect to the filing of the Chapter XI petition. Mr. Ruskin in his renewed petition alleges that the filing of the Chapter XI petition constitued a default on the debtor's notes, thereby giving him the right to accelerate the indebtedness and foreclose the collateral, i. e., shares of stock of Stineway Drug Company and Ford Hopkins Company which were pledged by the debtor as security for the payment of two notes originally totaling $2,065,000. The notes were given by the debtor in connection with its purchase·of all the outstanding stock of Ford Hopkins Company.

Pursuant to the decision by the Supreme Court in General Stores Corp. v. Shlensky, 350 U.S. 462, 76 S.Ct. 516, 100 L.Ed. 550, to the effect that the debtor required a more pervasive reorganization than is possible under Chapter XI, the petition was amended so as to bring the proceedings within the provisions of Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The amended petition was approved by this court on May 1, 1956. Neither the secured creditors nor Mr. Ruskin as the representative of the said class voiced any objection to the filing of the Chapter X petition. A notice of foreclosure had been served on the debtor on April 13, 1956.

The two notes which evidence the indebtedness provide for quarterly amortization payments of $50,000 and mature on May 19, 1964. It is claimed by the petitioner that these notes have been in default since October 18, 1954. The trustee contends that at all times there were funds of Ford Hopkins Company available to the petitioner, who controls the management of the subsidiary corporations, which he could have used to meet the quarterly installment payments. The trustee states that some funds were applied in part to the redemption of a 4% income note due March 1, 1965 to Lewis J. Ruskin, individually, in the amount of $112,696.08 and retirement of $47,300, 5% debentures due October 1, 1966, leaving unrestricted funds on September 29, 1956, of $450,213.73.

In his report, pursuant to Section 167(5) of the Bankruptcy Act, the trustee states that apart from an intercom-

pany account between the debtor and its subsidiary, Stineway Drug Company, the claims of unsecured creditors total $1,388,149.47, of which $853,825.59 represents claims which were assigned to one Richard Goodman of Chicago, a substantial stockholder of the debtor. The objections to the allowance of Goodman's claims were overruled by the referee. The trustee has petitioned for a review of the referee's order, a matter which does not concern the question now under consideration.

Subsequent to the filing of the trustee's report and in accordance with the order of this court, Richard Goodman submitted to the trustee his proposed plan of reorganization, which called for his investing in the corporation approximately $450,000, representing about $900,000 in claims, in exchange for capital stock of the debtor. Goodman also offered a $400,000 loan to the corporation for subordinated convertible debenture notes payable within six years with interest at the rate of 5% per annum, payable quarterly. The proposed plan then provided that the secured creditors be paid approximately $883,000 in cash and that a new note at 4% interest per annum be issued for the balance, secured by a first mortgage on the warehouse and real estate of the debtor. The secured creditors were to surrender their present security, namely, the stock of Ford Hopkins and Stineway Drug Companies, and the two subsidiaries were to be merged with the debtor corporation.

Mr. Goodman has informed the trustee and this court that he wishes to amend his proposed plan so that it should provide that he will invest $450,000 in cash for capital stock of the debtor. In addition, he will cause a bank to lend $900,000 to the debtor in exchange for debenture notes at 5% interest per annum. The total of $1,350,000 thus received by the debtor would be paid in reduction of the indebtedness of the secured creditors. The amended plan would also eliminate the merger provisions of the originally proposed plan and would pro-

vide that the secured creditors retain as security the stock of the two subsidiaries. Moreover, Goodman proposes that the yearly interest rate from the date of the alleged default be either 4% (the rate of interest prior to the alleged default) or 6% (the rate specified in the contract in the event of default), whichever figure the court determines to be correct. Therefore, accepting the petitioner's contention that the amount owing for principal and interest on the secured indebtedness as of April 8, 1957, is $2,291,912.13, the secured creditors' receipt of $1,350,000 under the proposed plan would reduce the indebtedness to $941,912.13, which would be secured by the capital stock of the two subsidiaries. Petitioner's expert has estimated that the fair value for all the stock of the two subsidiaries is $1,600,000, or nearly twice the amount of the reduced indebtedness as proposed under the amended plan.

The petitioner states that any plan which does not provide for full cash payment of the indebtedness is unacceptable to the secured creditors and that since no such plan has been proposed, the stay should be vacated. The motion to vacate the stay attempts to short circuit the procedure outlined under Chapter X of the Bankruptcy Act regarding the formulation of a plan of reorganization and is, in effect, a motion to dismiss the proceedings without notice to all creditors and stockholders of the debtor. A motion of this nature should be granted only if it appears that a proposed plan of reorganization would not on its face be fair, equitable and feasible and would not provide adequate protection for a class of creditors which is affected by and does not accept the plan by a two-thirds majority.

Section 169 of the Bankruptcy Act contemplates that a trustee under Chapter X shall prepare and file a plan of reorganization or a report of his reasons why a plan cannot be effected. If a plan is filed by the trustee, the creditors and stockholders of the debtor, the Secretary of the Treasury and the Securities and

Exchange Commission are entitled to notice of a hearing on the plan. After the hearing and upon receipt of the report of the Securities and Exchange Commission, the court determines whether the plan or plans complies or comply with the provisions of Section 216 and is fair and equitable and feasible. Bankruptcy Act, § 174.

The trustee has not yet filed a plan of reorganization, nor has he filed a report explaining why a plan cannot be effected. Indeed, the trustee has expressed his belief that his discussions with Mr. Goodman regarding Goodman's proposed plan, as amended, will result in a plan which can be recommended to the court and, therefore, requests that the court fix a time within which he shall prepare and file a plan.

Section 216(7) of the Bankruptcy Act requires that a plan of reorganization affecting a class of creditors which does not accept the plan by a two-thirds majority must provide "adequate protection for the realization by them of the value of their claims against the property dealt with by the plan and affected by such claims * * *". There then follows four methods by which "adequate protection" may be effected:

"(a) by the transfer or sale, or by the retention by the debtor, of such property subject to such claims; or (b) by a sale of such property free of such claims, at not less than a fair upset price, and the transfer of such claims to the proceeds of such sale; or (c) by appraisal and payment in cash of the value of such claims; or (d) by such method as will, under and consistent with the circumstances of the particular case, equitably and fairly provide such protection."

Subdivisions (a), (b) and (c) are unsuitable in the instant case and consequently in order to obtain judicial approval any plan of reorganization in this proceeding must comply with subdivision (d) unless new developments occur.

In order for a plan to be equitable and fair and provide adequate protection, the dissenting classes must receive "complete compensation" or the "indubitable equivalence" of the rights surrendered under the plan. In re Murel Holding Corporation, 2 Cir., 1935, 75 F.2d 941; Security-First Nat. Bank of Los Angeles v. Rindge Land & Navigation Co., 9 Cir., 1936, 85 F.2d 557, 107 A.L.R. 1240, certiorari denied 299 U.S. 613, 57 S.Ct. 315, 81 L.Ed. 452; In re Radio-Keith-Orpheum Corporation, 2 Cir. 1939, 106 F.2d 22. Without passing on the point at this time, it may subsequently develop that a cash payment to the secured creditors in the sum of $1,-350,000, leaving an indebtedness as of April 8, 1957, according to petitioner's figures, of $941,912.13, secured by the stock as aforesaid, constitutes the "indubitable equivalence" of complete compensation, especially if such payment puts the secured creditors in a better position than they would have been in had there been no cessation of payments on the two notes. In any event, at this point, and in a summary fashion, I will not conclude that the so-called "indubitable equivalence" means complete payment in cash, as the petitioner contends. Consequently, the plan which Mr. Goodman submitted to the trustee within the period fixed by this court, as modified by Goodman's proposed amendments, merits consideration and, in accordance with Section 169 of the Bankruptcy Act, should not be rejected without a hearing.

None of the cases cited by petitioner or by the court in its previous decision denying petitioner's original application for a vacation of the stay holds that immediate full payment in cash is the only "indubitable equivalence" of the rights of a class of non-assenting secured creditors in a Chapter X reorganization. Although payment in cash is one of the methods set forth in Section 216 (7) of the Bankruptcy Act, it is not the only method. Petitioner's contention that any plan which does not provide for

his immediate full payment in cash deprives him of his constitutional rights under the Fifth Amendment would render meaningless subdivision (d) of Section 216(7), which reads: "by such method as will, under and consistent with the circumstances of the particular case, equitably and fairly provide such [adequate] protection."

It is my opinion that a fair and equitable plan of reorganization in accordance with Section 216(7) is not beyond the realm of possibility, and, in fact, may likely be effected. Therefore, I must again deny without prejudice petitioner's motion for an order vacating the stay.

The trustee's motion for an order fixing the time within which he shall prepare and file a plan or report of his reasons why a plan cannot be effected is granted, and it hereby is fixed as May 15, 1957.