In the Matter of FRANK FEHR BREW-
ING CO., a Corporation, Debtor.
Fehr KREMER, Appellant,

v.

Oldham CLARKE, Trustee, Appellee.

No. 13876.

United States Court of Appeals
Sixth Circuit.

June 16, 1959.

See also 160 F.Supp. 631.

Myron N. Krotinger, Cleveland, Ohio, Louis Lusky and Marvin H. Morse, Louisville, Ky., for appellant.

Oldham Clarke, Louisville, Ky., for trustee appellee.

Thomas G. Meeker, David Ferber, Washington, D. C., J. Kirk Windle, Chicago, Ill., for Securities and Exchange Commission.

Samuel L. Greenebaum, Louisville, Ky., for Kopmeyer Group.

Blakey Helm, Louisville, Ky., Edward Slovick, Chicago, Ill., John T. Ballantine, Louisville, Ky., for preferred stockholders.

J. Leonard Walker, U. S. Atty., Louisville, Ky., for United States.

James C. Paradise, Cincinnati, Ohio, for Union.

T. Kennedy Helm, Jr., Louisville, Ky., for creditors.

Charles W. Dobbins, Louisville, Ky., for general creditors committee.

C. E. Schindler, Louisville, Ky., for C. I. T. Corp.

Before MARTIN, Chief Judge, MILLER, Circuit Judge, and BROOKS, District Judge.

SHACKELFORD MILLER, Jr., Circuit Judge.

On August 13, 1957, the Frank Fehr Brewing Company, incorporated under the laws of Delaware, filed its voluntary petition in the United States District Court for corporate reorganization under the provisions of Chapter X of the Bankruptcy Act. Sec. 501 et seq., Title

11 U.S.C.A. The appellant Fehr Kremer is the President of the corporation and individually and as trustee owns the majority of the common stock. He appeals from an order of the District Court confirming a proposed plan of reorganization. The appellee, Oldham Clarke, was appointed Trustee on August 14, 1957. On September 30, 1957, he was authorized and directed to operate the business of the debtor until further order, which he has done. He seeks to have the order of confirmation affirmed.

On September 30, 1958, the Trustee tendered his report under Sec. 167 of the Act, Sec. 567, Title 11 U.S.C.A. The following facts stated in this report give some of the background of the case. The Frank Fehr Brewing Company and its predecessors have been engaged in the business of manufacturing, bottling and selling draft and package beer from its present location at 412 Fehr Avenue, Louisville, Kentucky, since 1872. The business was founded by Frank Fehr, a native of Germany, who operated the brewery until his death in 1891. After his death the business was carried on by his son, Frank Fehr, Jr. (known as Colonel Fehr), and later by his grandson Fehr Kremer, the present appellant. The present corporation was organized after the repeal of prohibition in 1933. It owns a modern plant which is in good repair and capable of producing 400,000 barrels of beer per annum. The one product, Fehr's XL Beer, is now generally regarded as excellent in taste and flavor, acceptable by consumers, and as good as any beer that is sold in this market area. It is a local or popular priced beer, with distribution largely restricted to cities in Kentucky and southern Indiana. The corporation has approximately 150 employees who are well experienced. The majority of the employees are unionized and their contract specifies a union shop.

The business of the corporation expanded from 1933 to 1940, although considerable difficulties were experienced due to inadequate working capital and inability to capture a sufficient share of the available market. From 1941 through 1949 the business enjoyed its prosperous years. In 1950 a consistent sales decline began, with the inevitable result of profits turning into losses. From 1949 to 1957 there was a sales decline from $9,223,000.00 to $2,987,000.00 and a profit before taxes of $1,224,000.00 in 1949 to a loss of $192,000.00 in 1957. The company has suffered substantial losses each year since 1952.

The record discloses that in 1955 the loss was approximately $571,000.00, although it is contended by appellant that this was the result of an involuntary temporary change of management and bookkeeping entries which did not truly reflect the usual operation of the company. In 1957 the loss was approximately $189,000.00. In 1958 the loss was approximately $223,000.00. Trustee has been operating at a comparable substantial loss during his operation of the company. In the last six and one-third years losses have totaled approximately $1,722,000.00.

At the time of the filing of the petition herein on August 13, 1957, the debtor corporation had outstanding 379,917 shares of 6% preferred stock of a par value of $1.00 per share and 469,086 shares of common stock of a par value of $0.50 per share. There were approximately 1700 holders of preferred stock and approximately 180 holders of common stock. No dividends had been paid on the preferred stock since December, 1954. Unpaid dividends were cumulative. In the event of liquidation the preferred stock was entitled to receive the sum of $1.50 per share plus an amount equal to all unpaid cumulative dividends.

The Trustee recommended that the debtor corporation be reorganized if it could be done on a sound basis. The District Court entered an order that parties in interest be given until October 27, 1958, within which to submit to the Trustee suggestions and proposals for a plan of reorganization; and that prior to November 10, 1958, the Trustee report a plan of reorganization which he deemed to be fair and feasible, or a report of his reasons why a plan could not be perfect-

ed. At a hearing on November 10, 1958, the Trustee reported that he had no plan which he could recommend but that he expected to receive a proposed plan from a new group. The Court extended the time for submitting plans to December 1, 1958, and thereafter to December 26, 1958. On December 26, 1958, the Trustee submitted a proposed plan of reorganization, the details of which will be stated later, based upon an offer made by M. R. Kopmeyer and others, hereinafter referred to as the Kopmeyer Group. This group was composed of some seventeen businessmen in the Louisville area who offered to put $400,000.00 in new money into the reorganized company. The Trustee stated that this was the best plan which had been received by him and that it met the requirements of the statute. He recommended that the Court enter an order approving the plan and fix a time limit within which it could be accepted. The Court entered an order fixing January 13, 1959, for a hearing.

On January 13, 1959, there was an extended hearing with the introduction of proof dealing with the financial condition of the debtor and the valuation of its assets. The proposed plan was amended and as amended was approved by the Court by order of January 16, 1959. The order stated that the common stock of the corporation had no value, either on the basis of the value of corporate assets or on a fair capitalization of the estimated earning power of the reorganized corporation, and fixed February 17, 1959, as the last day on which creditors and preferred stockholders affected by the plan might accept the same in writing. Thereafter, the Trustee made his written report with respect to acceptances of the plan, as follows:

1. Preferred Stockholders. Acceptance of Plan.
 Of $379,917.00 outstanding ....$260,799.00
 (Percentage accepting plan 68.6%·)
 (In number 1,132 of 1,703 owners)
2. Creditors. Acceptance of Plan.
 Of $299,442.09 due .............$162,719.34
 (In number 163 of 195 creditors)

The report requested confirmation of the plan.

On February 19, 1959, the Court entered an order which read in part as follows:

"It appearing to the court that a sufficient number of preferred stockholders have filed their written acceptances of the Trustee's Amended Plan of Reorganization of the Frank Fehr Brewing Company and that said plan makes adequate protection for all creditors as prescribed in paragraph 7 of Section 216 of Chapter X of the Bankruptcy Act; and it further appearing that said Trustee's Amended Plan of Reorganization is now eligible for confirmation under Section 179 of the Bankruptcy Act, and the said trustee having requested confirmation of such plan, it is

"Ordered, that Tuesday, the 17th day of March, 1959,"

be designated as the time and place for a hearing on the application for confirmation.

At the hearing on March 17, 1959, evidence was introduced with respect to the current assets and current liabilities of the debtor as of January 31, 1959, and the amount and relative rank of claims against the debtor and Trustee as of January 31, 1959. After further amendments suggested by the Securities and Exchange Commission, which were agreed to by the Trustee, the Court entered its order of March 17, 1959, which overruled the objections of certain creditors and objections of certain preferred

stockholders, and confirmed the plan. This order contained findings of the Court that the plan provided for all unsecured creditors adequate protection for the realization by them of the full value of their claims; that a sufficient number of preferred stockholders had filed their written acceptances of the plan; that as found in the order of January 26, 1959, the old common stock of the debtor was of no value; and that the plan was fair, equitable and feasible.

It appears from the record that by letter of October 23, 1958, Fehr Kremer's then counsel withdrew from further representation of him in this matter. It seems to be agreed that from October 23, 1958, until shortly before April 24, 1959, Fehr Kremer was without representation by counsel in this case although he attended and participated in the hearings and represented himself. He was not a lawyer. On April 24, 1959, Mr. Louis Lusky and Mr. Marvin H. Morse, two of his present counsel, made entry of appearance and statement of attorneys as counsel for Fehr Kremer, the appellant herein, under Sec. 210 of the Act. This statement stated that Fehr Kremer was the owner individually of 103,184 shares of common stock and held an additional 159,000 shares of common stock as trustee. He also owned individually 200 shares of preferred stock. On April 24, 1959, said attorneys on behalf of Fehr Kremer as a common stockholder of the debtor corporation appealed to this Court from an order confirming the amended plan of reorganization entered on March 17, 1959.

The plan of reorganization, as amended and confirmed, provides, (a) that secured and preferred claims in the amount of approximately $18,847.51 be paid in cash in full; (b) that a United States income tax claim (approximately $156,697.-13) shall be paid in cash, or by other means acceptable to the Government, if not set aside on appeal or adjusted by agreement; (c) that the Trustee's costs be paid in full when filed and approved in an amount not to exceed $50,000.00; (d) that claims of unsecured creditors under $100.00 be paid in cash in full; (e) that a sufficient sum be paid in cash on all other unsecured claims to reduce them to even amounts in hundreds of dollars; (f) that the balance owing the unsecured creditors be exchanged for 5% first mortgage bonds, due in five years, secured by mortgage on the lands, buildings, machinery and equipment owned by the corporation, except certain designated parcels of land, on a dollar for dollar basis; (g) that all present preferred stock of the corporation be cancelled and that the preferred shareholders be issued new preferred stock on a share for share basis. Such new preferred stock would have a par value of $1.00 per share, bear a dividend rate of 6%, payable annually, which would be cumulative, be callable at the option of the company at $1.05 per share, and be entitled to receive in dissolution $1.50 per share prior to any distribution to any common stockholder; (h) that the present common stock of the company be declared worthless and cancelled; and (i) that new common stock in the amount of $400,000.00 be sold to the members of the Kopmeyer Group.

The offer of the Kopmeyer Group to purchase common stock in the amount of $400,000.00 provided that it would expire on April 28, 1959, unless the plan was put into effect by said date. It will be noticed that the order confirming the plan was entered on March 17, 1959, and that the present appeal by a common stockholder was taken on April 24, 1959, just prior to the expiration of the time in which an appeal could be taken, Sec. 48, sub. a, Title 11 U.S.C.A.; Wilson v. Shamrock Amusement Corp., 9 Cir., 221 F.2d 687, and just a few days before April 28, 1959, at which time the offer of the Kopmeyer Group would expire. The plan of the Kopmeyer Group was the only plan of the few that were submitted to the Trustee that provided for payment of new money into the debtor corporation, which the Trustee considered vital for a successful reorganization. Unless the plan was put into effect by April 28, 1959, the opportunity to acquire this $400,000.-00 of new capital would be lost unless the

offer was continued in effect by the Kopmeyer Group. On April 25, 1959, appellant moved in the District Court for a stay of proceedings pending appeal in order to prevent the plan from being put into effect until after the appeal was heard and disposed of. The motion was heard and denied by the District Judge unless appellant executed an indemnity bond in the amount of $20,000.00. On April 27, 1959, a similar motion was made before an individual judge of this Court who held a hearing and ruled to the same effect. These rulings were based chiefly upon the unwillingness of each of the judges to delay the consummation of the plan until after April 28, 1959, with the possible result that the offer of the Kopmeyer Group would no longer be available and the entire plan would have to be discarded regardless of its thorough consideration through the proceedings in the District Court and its approval and confirmation by the District Judge. Appellant did not execute the indemnity bond, alleging financial inability to do so. However, at the request of the appellee, concurred in by the appellant, this Court agreed to accelerate the hearing and disposition of this appeal, and the Kopmeyer Group has held its offer open until the hearing of this appeal by this Court on June 4, 1959. Briefs for the respective parties were filed in the meantime.

■ Appellant's first contention is that the District Judge erred in holding that the common stock had no value and in confirming a plan that failed to give to the common stockholders some portion of the assets of the debtor corporation. The correctness of this contention depends upon the value of the assets of the corporation and upon the amount of claims and debts having a right to payment in liquidation prior to the claims of common stockholders. Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110; Consolidated Rock Products Co. v. DuBois, 312 U.S. 510, 520–521, 61 S.Ct. 675, 85 L.Ed. 982.

■ In the order of January 16, 1959, approving the plan, the District Judge recognized the necessity of determining the value of the debtor corporation through a capitalization of prospective earnings. Consolidated Rock Products Co. v. DuBois, supra, 312 U.S. 510, 525–526, 61 S.Ct. 675, 85 L.Ed. 982. He found on the evidence before him that the prospective earnings of the reorganized corporation were reasonably estimated to amount to $91,833.75, which, capitalized at the rate of 12½% which appeared to be the fair rate for capitalizing the earnings of a corporation in the brewery business, gave a valuation of $734,670.00. However, he made a finding of fact that from all the evidence in the case the assets of the debtor corporation were worth approximately $900,000.00, which he described as "a realistic value based upon the appraisals, less selling commissions, cost of selling, expenses of administration during the period required for selling, and in view of the fact that it might be impossible to get full 'fair market value' within a reasonable time."

■ This valuation is vigorously attacked by appellant who contends that the valuation should be not less than $1,331,312.50. Appellant arrives at this figure by using the Hoblitzell and Herig appraisals as follows:

Lands and buildings (Hoblitzell) ......$ 708,500.00
Machinery and equipment (Herig) ..... 410,304.50
Current assets ...................... 212,507.65

Total ......................$1,331,312.15

However, the District Judge was not required to accept these appraisals. Another appraisal by Harold Rosen placed a valuation of $588,850.00 upon the corporation's real estate. He testified that there was quite a surplus of warehouse and manufacturing space in Louisville at the time. Harold K. Hirschberg appraised the machinery and equipment at $263,575.00. He testified that there was a highly depressive market for all types of brewery machinery and equipment. There is considerable disagreement about the value of "current assets" in the event of liquidation. Appellant's attack upon the fairness or correctness of the Rosen and Hirschberg appraisals is largely a question of credibility, which is a matter primarily for the consideration of the District Judge. With this conflict in the evidence before him, the District Judge was entitled to make his own valuation, which he did, placing it at approximately $900,000.00. A number of factors are involved in arriving at a fair liquidation value, including the facts, as referred to by the District Judge, that expenses of administration were accumulating during the period required for selling and it might be impossible to get the full fair market value within a reasonable time.

Appellant also contends that the Court's valuation fails to recognize the "going concern" value of the debtor corporation, including good will and the brand name of its product. But the evidence fails to show that the debtor corporation has any "going concern" value. The Trustee tried unsuccessfully for about a year and a half to interest some fifty breweries in the debtor corporation. The evidence showed that approximately one hundred breweries had closed in the preceding eight or nine years. The unsuccessful operation of the debtor corporation for a number of preceding years was obviously a material factor in the picture. Appellant's arguments on this phase of the case may have some theoretical merit, but they are not supported by the evidence.

■ Likewise, we fail to find any merit in appellant's contention that the first year's estimated earnings of the debtor after reorganization of $91,833.75, which was used for the purposes of capitalization, should be materially larger. This is, of course, an uncertain figure. It may result in a larger amount. Considering the past, it involves an element of speculation and could be less. The amount indicated conforms to the evidence on the issue. Arguments addressed to this Court that it should be higher cannot be substituted for evidence that was not presented for the consideration of the District Judge.

On our review of the evidence with respect to the value of the assets of the corporation in liquidation, we are not able to say that the finding of the District Judge is clearly erroneous. Rule 52 (a), Rules of Civil Procedure, 28 U.S.C.

■■ At the March 17, 1959, hearing Edward F. Reiss, the comptroller, bookkeeper and office manager of the debtor corporation, gave the following breakdown of current liabilities as of January 31, 1959.

| | |
|---|---|
| Liabilities of the Trustee | $163,981.67 |
| Estimated costs of administration | 50,000.00 |
| U. S. Income tax claim | 156,697.13 |
| Preferred claims, approved by court | 14,417.59 |
| Secured claims, approved by court | 4,694.31 |
| Unsecured claims | 280,657.70 |
| **Total** | **$670,448.40** |

To this amount it would be necessary to add the liquidation preference of the preferred stock in the amount of $569,875.50, together with accrued dividend arrears in the amount of $91,000.00, Central States Electric Corp. v. Austrian, 4 Cir., 183 F.2d 879, 887–888, certiorari denied 340 U.S. 917, 71 S.Ct. 350, 95 L.Ed. 662 making a total of $1,331,323.90 which would have to be paid under the rule of full and absolute priority before the common stockholders would be entitled to receive anything. Case v. Los Angeles Lumber Products Co., supra, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110; Consolidated Rock Products Co. v. DuBois, supra, 312 U.S. 510, 520–521, 61 S.Ct. 675, 85 L.Ed. 982.

Appellant's contention that United States income tax claim should not be included because it is contingent and not yet finally adjudicated may have merit, although, as hereinafter pointed out, the claim has been reduced to a judgment in the District Court, from which the Trustee has taken an appeal to this Court. A ruling on the question appears unnecessary. If it is excluded, the total amount of claims prior to common stockholders is reduced to $1,174,626.77.

Since the assets are insufficient to pay these prior claims, there was no error in the ruling of the District Judge that the common stock had no value, that the holders thereof were not affected by the plan, and that it was unnecessary for the plan to contain any provision allocating to them any portion of the assets of the debtor corporation. In re 620 Church Street Building Corp., 299 U.S. 24, 57 S.Ct. 88, 81 L.Ed. 16.

The United States has an income tax claim against the debtor for the years 1948 through 1952 in the amount of $156,697.13. One of the defenses to this claim is the debtor's contention that the returns were not fraudulent, with the result that fraud penalties should not be included, and that the assessment by the Commissioner on August 23, 1957, was barred by the three-year statute of limitations. Sec. 275, Title 26 U.S.C. The Government contends that because of fraud, the three-year statute is not applicable, and the claim is not barred. Sec. 276, Title 26 U.S.C. This issue was heard and decided by the District Judge who found as a fact that the tax returns of the debtor for each of the years in question were fraudulent. Judgment was entered to that effect. In re Frank Fehr Brewing Co., D.C.W.D.Ky., 160 F.Supp. 631. The debtor has taken an appeal to this Court from that judgment.

Appellant contends that this claim is a disputed, contingent claim, and that the plan is premature in not waiting until this litigation is disposed of. Counsel outlines to us with confidence reasons why this judgment may be reversed. We cannot decide that case in this appeal. The Trustee is vigorously contesting the liability, but the case is far from being finally decided. The Trustee has obtained several extensions of time for filing his brief, and the case will probably not be heard and finally disposed of by this Court until after January 1, 1960. If certiorari is sought by the losing party, a number of additional months could probably elapse before final disposition. It is not unreasonable to assume that final disposition may be delayed until approximately a year from the present time. In the meantime, the local problem is pressing and acute with the Trustee operating at a substantial loss. Experience offers little hope for a successful reorganization if postponed to such an indefinite time in the future. Under the circumstances, we think it was not improper to proceed with reorganization at the present time instead of waiting until the termination of that litigation, and to have the plan recognize the present status of this claim and to make provision for its payment if the Trustee is not successful in having it rejected. The obligation of the Kopmeyer Group to pay this claim if it is finally allowed is but one of many factors entering into its overall offer, which must be considered as an entirety in determining whether it is fair and equitable to creditors and stockholders. Central States Electric Corp. v. Austrian, supra, 4 Cir., 183 F.2d 879, 882, certi-

orari denied 340 U.S. 917, 71 S.Ct. 350, 95 L.Ed. 662.

Appellant contends that the order of confirmation is invalid because it was not accepted in writing by creditors holding two-thirds in amount of the claims filed and allowed of each class, as required by Sec. 179 of the Act, Sec. 579, Title 11 U.S.C.A. Appellee concedes that it was not accepted by two-thirds in amount of the unsecured claims. But Sec. 179 also provides that this is exclusive of creditors who are not affected by the plan or for whom payment or protection has been provided as prescribed in paragraph 7 of Sec. 216 of the Act, Sec. 616, Title 11 U.S.C.A. Paragraph 7 of Sec. 216 refers to creditors for whom adequate protection for the realization by them of the *value of their claims* against the property dealt with by the plan and affected by such claims has been provided "by such method as will, under and consistent with the circumstances of the particular case, equitably and fairly provide such protection." Sections 10.12 and 10.13, Collier on Bankruptcy, 14th Edition. The order of March 17, 1959, confirming the plan contains the finding, "The said plan provides for all unsecured creditors adequate protection for the realization by them of the full value of their claims and accords them the indubitable equivalence of the rights surrendered under the plan." Reasons were stated for this finding. It is not an arbitrary or illegal one. In re General Stores Corporation, Debtor, D.C.S.D. N.Y., 150 F.Supp. 868, 871–872, affirmed Ruskin v. Griffiths, 2 Cir., 250 F.2d 875. No creditor has appealed from the finding. No creditor objects to it on this review. We do not believe the common stockholders have any standing to contend on this review that the plan does not provide adequate protection to the unsecured creditors for the realization by them of the value of their claims. If the creditors are willing to accept less than they might otherwise be entitled to, it is not for the common stockholders to insist that they not be permitted to do so. Such a disposition of the claims of creditors leaves more assets available for preferred and common stockholders instead of less. Since by reason of Sections 179 and 216 of the Act acceptance by two-thirds in amount of the claims of creditors is not jurisdictional, appellant's contention that the plan did not receive such acceptance does not invalidate the confirmation.

At the time of the confirmation of the plan five general creditors holding claims in the total amount of $122,724.37 filed written objections to the confirmation on the ground that the plan had not been accepted by creditors holding two-thirds in amount of general claims filed and allowed, and that it did not provide adequate protection for the realization by the non-assenting general creditors of the value of their claims against the property dealt with by the plan. In the March 17, 1959, order of confirmation these objections were overruled. No appeal was taken by these objecting creditors. Between the 15th and 21st of April, 1959, certain individuals purchased the claims of these objecting creditors at a price alleged by appellant to be 80% of their face value. On April 25, 1959, upon motion of the purchasers, the District Judge ordered that the written assignments of the claims be filed and that the purchasers be subrogated to all the rights of the original claimants. On the same date the purchasers filed their withdrawal of their assignors' objections to the confirmation, their acceptance of the plan, and agreed to the order of confirmation. The time for acceptance of the plan had expired on February 17, 1959. The District Judge ordered the papers filed but made no further order with respect to them. The purchasers of these claims were neither creditors, stockholders nor officers of the debtor corporation, but two of the purchasers were members of the Kopmeyer Group.

Appellant contends that the foregoing transactions invalidate the confirmation of the plan. He relies upon Sections 203 and 221(3) of the Act, Sections 603 and 621(3), Title 11 U.S.C.A. These sections

require good faith on the part of the holder of any claim in his acceptance of a plan. In re Fuller Cleaning & Dyeing Co., 6 Cir., 118 F.2d 978. Specifically, Sec. 221(3) provides, "The judge shall confirm a plan if satisfied that * * * (3) the proposal of the plan and its acceptance are in good faith and have not been made or procured by means or promises forbidden by this title."

█ Under the view which we have hereinabove expressed with respect to the authority of the Court to confirm the plan irrespective of its acceptance by creditors holding two-thirds in amount of claims, the contention must be rejected. The plan had been confirmed prior to the purchase of the claims. The action of the purchasers in thereafter accepting the plan was after the time for acceptance had expired, was not acted upon by the Court as an acceptance, and played no part whatsoever in the confirmation of the plan. The plan was not confirmed on the basis of acceptances by creditors. As a general proposition, it is not against public policy for a creditor to assign a claim to a purchaser even though it be for less than face value. In re Lorraine Castle Apartments Bldg. Corp., 7 Cir., 149 F.2d 55, 57–58, certiorari denied 326 U.S. 728, 66 S.Ct. 35, 90 L.Ed. 432; Standard Gas & Electric Co. v. Deep Rock Oil Corp., 10 Cir., 117 F.2d 615, 619. Self interest is not the same as ulterior motive or bad faith. The purchase of creditors' claims for the purpose of securing the approval of a plan which the purchaser considers to be in his best interests does not of itself amount to bad faith so as to invalidate the plan. Sec. 9.21, pages 2884–2885, Collier on Bankruptcy, 14th Edition.

█ Nor, under the circumstances stated, do we find any violation of a fiduciary duty owed to the appellant, such as existed in Young v. Higbee Company, 324 U.S. 204, 65 S.Ct. 594, 89 L.Ed. 890. The purchasers were not stockholders, directors or officers of the debtor corporation. They were strangers to the corporation and to its stockholders. In re Lorraine Castle Apartments Bldg. Corp., supra,

7 Cir., 149 F.2d 55, certiorari denied 326 U.S. 728, 66 S.Ct. 35, 90 L.Ed. 432. The claims were purchased outright; the assignments were not subject to future contingencies. The purchasers were entitled to handle the claims so purchased in accordance with what they considered to be their own best interest. They did not dismiss any pending appeal by creditors from the order of confirmation. There was no duty upon them to take such an appeal. The purpose of the statute was "to prevent creditors from participating who 'by the use of obstructive tactics and hold-up techniques exact for themselves undue advantages from the other stockholders who are cooperating.'" Young v. Higbee Company, supra, 324 U.S. 204, 211, 65 S.Ct. 594, 598, note 10. There was no such conduct involved in this case.

█ Sec. 179 of the Act, Sec. 579, Title 11 U.S.C.A., requires that the plan be accepted by stockholders holding a majority of the preferred stock outstanding before it can be confirmed by the court. Following the balloting, the Trustee reported to the Court that out of 379,917 shares of preferred stock outstanding, holders of 260,799 shares had accepted the plan. This was 68.6% of the outstanding shares. Thereafter, in the order confirming the plan the District Judge made the following finding of fact, "A sufficient number of preferred stockholders have filed their written acceptances of said plan." Appellant nevertheless contends that the plan was not validly accepted by the preferred stockholders. In support of his contention, he points out that of the 260,799 shares voted in favor of the plan, holders of 26,547 shares later sent in notices of revocation of acceptance, and that 6,020 shares voted in favor of the plan were jointly owned but voted by only one of the joint owners.

█ We do not find in the record that the District Judge was asked to rule on these votes which are now objected to on this appeal. The proper procedure appears to be that a stockholder who has accepted the plan is not

entitled as a matter of right to withdraw or revoke his acceptance, but that such stockholders should apply to the court for leave to withdraw, giving the reason for the same. If the reason is found sufficient by the court, the withdrawal should be permitted. Continental Ins. Co. v. Louisiana Oil Refining Co., 5 Cir., 89 F. 2d 333, 337–338; In re Clark & Willow Streets Corporation, D.C.E.D.N.Y., 21 F. Supp. 43, 44; In re Pressed Steel Car Co. of New Jersey, D.C.W.D.Pa., 16 F.Supp. 329, 336–337; Sec. 7:39, Collier on Bankruptcy, 14th Edition. As was pointed out in the Pressed Steel Car Co. case, otherwise the holders of a few shares, who had previously voted for a plan could, by threatening revocation of their assents, obtain an undue advantage over others. On the record before us, including the finding of the District Judge that a sufficient number of preferred stockholders had filed their written acceptances of the plan, and at this stage of the litigation, we cannot declare invalid the votes of those stockholders who accepted the plan in writing and subsequently sent in notices of withdrawal without asking for or obtaining a ruling of the court permitting them to do so.

■ For similar reasons, we are also of the opinion that the acceptances by the 6,020 shares of jointly owned stock should be held valid on this review. In re Clark & Willow Streets Corporation, supra, D.C.E.D.N.Y., 21 F.Supp. 43, 44–45. As pointed out in that case, the important thing is whether the consent was in fact executed, and if objection had been made to the form of the consent leave might very well have been granted to those who executed the consents to correct nonessential defects. See also: In re Pressed Steel Car Co. of New Jersey, supra, D.C.W.D.Pa., 16 F.Supp. 329, 336–337; Sec. 7:38, Collier on Bankruptcy, 14th Edition.

Apart from the question of the validity of such challenged votes, it will be seen that if these votes in the total amount of 32,567 are rejected and subtracted from the 260,799 votes reported as accepting the plan, there still remains 228,232 votes which accepted the plan. This is slightly more than 60% of the outstanding shares of preferred stock. In re Pressed Steel Car Co. of New Jersey, supra, D.C.W.D. Pa., 16 F.Supp. 329, 336.

■ One final objection merits consideration. Some preferred stockholders favored the plan. Another group opposed the plan, largely on the ground that it did not give preferred stockholders enough consideration in the management of the reorganized corporation. At the time the plan was being sent out for acceptance, an attorney for the objecting group went to the Trustee's office and asked for a list of the names and addresses of the preferred stockholders for the purpose of soliciting their support in opposition to the plan. The Trustee at the time of his appointment had obtained a list dated August 14, 1957, copies of which were available to those requesting such a list. A copy of this list was given to the attorney by the Trustee's son, who was an attorney in his father's office. Although the evidence is somewhat indefinite as to the exact date, it appears that at about this time the Trustee had obtained from the transfer agent in Chicago another list of preferred stockholders as of January 16, 1959, which was being used in connection with the sending out of the ballots. This was a somewhat voluminous document and no copy of it was in the Trustee's office at the time the attorney asked for a list of the stockholders. The attorney used this old list in writing to the stockholders. He did not learn of the later list until in checking the ballots, just prior to the March 17, 1959, hearing, the difference came to his attention. The parties are not in agreement about the extent of this difference. Appellant contends that not less than 44,035 shares, which were voted in favor of the plan, were held by stockholders who were on the January 16, 1959, list, but who were not on the August 14, 1957, list, that they did not receive the letter of solicitation from the attorney for the objecting stockholders and that these shares should be rejected in computing the total numbers of shares

voted in favor of the plan. Appellee contends that the number was 37,465. Apparently, each party arrives at his conclusion by his own independent investigation *subsequent* to the taking of this appeal. There is no finding in the record about it. We do not believe it is material which figure is the correct one. Using appellant's figure for the purposes of computation, and deducting 44,035 shares from the 260,799 shares reported as voting for the plan, there remains 216,764 shares which accepted the plan. This is approximately 57% of the total shares outstanding.

Nor do we accept appellant's major premise that because stockholders holding 44,035 shares were on the later list and not on the earlier list and, consequently, did not receive the letter soliciting their support in opposition to the plan, these shares should be rejected in computing the total acceptances. We cannot assume that they would not have sent in acceptances if they had received a soliciting letter from the attorney for the objecting stockholders. The record does not support that contention. They were being urged to accept the plan by others. Other preferred stockholders accepted the plan. In fact, the same preferred stockholders who were objecting to the plan and soliciting others to join them have now withdrawn their objections and ask this Court to affirm the ruling of the District Judge confirming the plan. In the absence of some showing in the District Court supporting appellant's contention, we cannot on this review reject the 44,035 shares on such a conjectural basis.

We recognize that appellant's argument goes somewhat further. The point is made that the furnishing of the old list to the objecting stockholders in their solicitation of the support of other preferred stockholders, while those supporting the plan were able to and did use the later list, was so unfair the entire vote should be vitiated. Although that might be the proper remedy under some circumstances, we do not think the particular circumstances of this case warrant taking that procedure. The objecting preferred stockholders were not restricted by the Trustee to any list. Their attorney obtained from the Trustee's office the list which was then available for distribution and had been previously used for distribution to those requesting such a list. There was no representation that it was anything other than what it was, namely, a list of stockholders as of August 14, 1957. On its face it was not a current list, but one nearly a year and a half old. No request was later made for a more current list. It was available for anyone who requested it. The use of the old list may not have been as satisfactory for the purposes of the objecting preferred stockholders as they at one time wished, but the plan was nevertheless amended in their favor with the ultimate result that they are not now complaining and join in seeking its confirmation. Under the circumstances, we find no such unfairness which would cause us to invalidate the entire vote of the preferred stockholders at the request of one who appeals as a common stockholder only and who, as such, was not one of the group of preferred stockholders who originally opposed the plan but now waive the alleged irregularity hereinabove referred to.

 Appellant has made an independent investigation of the ballots subsequent to the appeal, the result of which is presented to us by his reply brief rather than by the record. Based upon this investigation, he makes these additional contentions. He states that 30 shareholders, holding a total of 3,615 shares, sent in ballots voting less than their entire holdings and that it is possible that in counting the votes of these shareholders the number of shares on the stockholders list was used instead of the number indicated by the ballots. He further states that 24 of the ballots purported to vote more shares than were owned by the signatory stockholder, the difference between the number of shares owned and the number of shares voted by these stockholders being 5,907. He also states that a number of ballots were re-

ceived after February 17, 1959, the date on which the balloting was closed, and suggests the possibility that these ballots were improperly included in the count. There may be factual answers to these contentions. With respect to the facts, we are of course, controlled by the record. Factual statements contained in a party's brief are not a part of the record. Chesapeake & O. Ry. Co. v. Greenup County, Ky., 6 Cir., 175 F.2d 169, 171; Bono v. United States, 2 Cir., 113 F.2d 724. These issues, if they exist, should have been raised, litigated in a proper hearing with the right to both parties to offer evidence thereon, and ruled upon in the District Court. These questions are raised for the first time on the appeal, and we believe come too late. Cold Metal Process Co. v. McLouth Steel Corporation, 6 Cir., 170 F.2d 369, 380; Apex Smelting Co. v. Burns, 7 Cir., 175 F.2d 978, 982; Helvering v. Wood, 309 U.S. 344, 349, 60 S.Ct. 551, 84 L.Ed. 796.

Other contentions made by appellant have had our consideration, but we believe it is unnecessary to discuss them in detail.

The judgment is affirmed.